Leon B. Polsky, J.
Maria Andino moves to suppress a statement made by her to an Assistant District Attorney during a taped interrogation at the office of the Special Narcotics Prosecutor.[1]
The interrogation begins with the assistant advising the defendant of the strength of the case against her and that he had asked to have her brought to his office to see if she would be willing to assist the police in arresting the people who supply her with drugs and make the money on the sales. (“ It is the other people we really want to get.”) The assistant then advised Mrs. Andino, “ If you can help us there, we can help you — we can make it not quite as bad for you. ’ ’ The defendant was informed she faced 15 years in prison before she would be “ eligible to get out ” (i.e., parole; see Penal Law, § 220.43 and Penal Law, § 70.00, subd. 3, par. [a], cl. [i]), but, “ If you Work with us that fifteen years doesn’t have to be. It could be made fewer years; it could be eight years, or six years or two years or one year. There is even a possibility that * * * I can’t promise you anything, it’s a big possibility, but there’s a chance you might not have to go to jail at all. What I can *157 promise you is that if you cooperate with us I can allow you [to] plead guilty * * * to something you might only have to do one or two or three years in jail instead of fifteen. And as I said * * * maybe, just maybe, no jail at all.” After the District Attorney’s offer had been repeated to her by a Spanish-speaking detective, Mrs. Andino replied that she wanted to help; that she wanted to be with her children, one of whom was a deaf mute who needed her.
Prior to this discussion, Miranda warnings — of a sort — Were given the defendant in Spanish by the detective, after which the Assistant District Attorney asked the defendant if she understood. The defendant apparently nodded her head affirmatively.
After the defendant was questioned concerning her dealings in cocaine, the interrogation concluded with the defendant indicating she wished to go home because there were six children at home and the windows had been left open.
The testimony at the hearing establishes that the defendant was arrested at her home in Brooklyn shortly before 3 p.m. at the direction of the Assistant District Attorney, who instructed the officers to bring her to his office at 26 Federal Plaza in Manhattan. The officers, upon gaining access to her apartment, falsely told Mrs. Andino that they were investigating her welfare claims and were going to take her to the welfare center, after which she would shortly be returned home. She was permitted to leave a note for her children, soon due back from school, and make some arrangements for them with a neighbor.
Then Mrs. Andino was taken to a waiting automobile and, in the car, then for the first time told she was under arrest for narcotics law violations. She was given Miranda warnings (in English) and denied selling drugs.[2]
After the questioning in the special prosecutor’s office, the defendant was arraigned in the Criminal Court in Brooklyn and returned home somewhere around midnight. Subsequently she failed to give the desired continued co-operation and she has been indicted for a class A-I felony and various lesser offenses.
This case is one of several eases before this court where, because of prosecutorial overreaching, statements made to Assistant District Attorneys have been suppressed. This is the second, and I hope the last, case where an uneducated non-English speaking woman was arrested at her home in one county and, instead of being promptly arraigned in that county, she *158 was brought to the office of the special prosecutor in another county to be interrogated. While an arrested person might normally expect to be brought to a nearby police station for booking and processing prior to arraignment, being brought to the prosecutor’s office can hardly instill in a defendant anything other than a settled conviction that he is totally subject to the control of his captors. Nor can the kind of discussion which preceded this interrogation convey to a prisoner anything other than a sense that his destiny is subject to the good will of his prosecutors. Under the circumstances surrounding the ritualized giving of the Miranda warnings by the arresting officers and the subsequent warnings in the special prosecutor’s office, I find that the defendant’s monosyllabic responses and nodding head fail to establish a knowing, voluntary and intelligent waiver of the right to remain silent.
This failure requires the suppression of the defendant’s statement to the extent that it may not be used by the People on its direct case. Additionally, and independently, I find that the statement was involuntary under long-established principles, having been induced by a promise that “ some benefit as to the crime and its punishment [would flow] from making a statement ” (Bram v. United States, 168 U. S. 532, 565; People v. Kurtz, 42 Hun 335, rearg. den. 43 Hun 637). Here the prosecutor promised Mrs. Andino that he would not insist upon the A-I felony prosecution which would mandate, at least, a 15-year to life sentence, but would allow her to plead guilty to a crime carrying a substantially shorter minimum term. This promise renders involuntary any statement made in reliance thereon. (Bram v. United States, supra; CPL 60.45, subd. 2, par. [b], cl. [i]; cf. Code Crim. Pro., § 395 [L. 1881, ch. 442].)
A third, and perhaps more significant reason for the suppression of the defendant’s statement, is that an unaided defendant cannot effectively waive the right to counsel at the kind of interrogation which took place in this case.
■ The defendant was arrested on a class A felony narcotics 'charge. In seeldng the defendant’s “ co-operation ”, the prosecutor and the unrepresented defendant were actually engaged in plea-bargaining. Whatever co-operation the defendant had to offer the prosecutor was the quid pro quo for a legal position to be taken by the People either in recommending the acceptance of a plea to a lesser charge (CPL 220.10; CPL 220.30) or recommending life probation (Penal Law, § 65.00, subd. 1). In a very real sense, an arrested defendant’s decision to “ co-operate ” 'with the authorities is a critical stage in the proceedings. (See *159 Hamilton v. Alabama, 368 U. S. 52; and White v. Maryland, 373 U. S. 59.) Whatever chance a defendant may have to trade information for more lenient treatment may he irretrievably lost by premature uncounseled disclosure. The presence of counsel will insure against a totally one-sided bargain where the defendant disgorges all he has in return for a vague promise of some later consideration if the information is deemed satisfactory by some absent higher authority.
Because co-operation with authorities by persons charged with class A narcotics law violations gives rise to a substantial statutory sentencing option not otherwise available, I hold that no statement made by such a defendant may be used at his or her trial where it is in any way generated by a suggestion that section 65.00 of the Penal Law may be invoked in the defendant’s favor.
The motion to suppress is granted.[3]

. The interrogation was partly in English and partly in Spanish. The entire tape of the interrogation was heard in chambers, with counsel present, and the Spanish language portions translated by the official court interpreter. The - parties have stipulated to the accuracy of a partial translated transcript which contains the matters which form the basis for this motion.

. I find the defendant’s comprehension of English is marginal.

. This is no occasion for the court to decide what other sanctions or remedies may be invoked where an unrepresented defendant gives some co-operation ■— deemed unsatisfactory by the People — under some instilled hope of substituting life-time probation for a sentence of life imprisonment.