Leon B. Polsky, J.
The defendant moves for the dismissal of an indictment which charges him with criminal sale of a controlled substance in the second degree, or, in the alternative for the court to "enforce a bargain with the district attorney’s office” whereby the defendant was allegedly promised life-time probation in return for his assistance in narcotics law enforcement. (Penal Law, § 65.00, subd 1, par. [b].)
The defendant contends that he has provided the People material assistance as an informer; that prior thereto he had been promised life-time probation in return for such assistance; that his efforts to provide assistance were frustrated by the incompetence of the officers to whom he was assigned; *786 that his life has been placed in jeopardy by his efforts on behalf of the People; and that his ability to defend against the original charge has been impaired by the delays in bringing the case to trial — delays due to his attempts to provide the People with material assistance.
The People flatly deny the making of any promise to the defendant other than that his co-operation would be considered both in terms of a recommendation for a lesser plea and/ or life-time probation. The People contend that the defendant never gave or attempted to give significant co-operation or assistance and indeed, may even have continued his own involvement in drug traffic during the period of his proffered co-operation.
Various pleadings and stipulations have narrowed the relevant issues and the following factual picture emerges.
The defendant was arrested on December 19, 1973 for an alleged sale of cocaine eight days earlier. After he was released on bail the arresting officers asked the defendant if he would "co-operate” in further police investigations. On the evening of December 20, a meeting was held in the defendant’s home — a meeting at which defendant’s counsel was present and participating. It is claimed that the officers promised that the defendant would not be indicted if he co-operated. Whether such a promise was in fact made is of no moment, for within two weeks (on January 3, 1974) defense counsel met with the Chief Investigating Assistant District Attorney of the Office of the Special Narcotics Prosecutor. The prosecutor indicated that the defendant’s case would be presented to the Grand Jury with a view towards obtaining an indictment and that if the defendant co-operated with law enforcement officials in further narcotics investigations, the prosecution would consider recommending "life probation” under paragraph (b) of subdivision 1 of section 65.00 of the Penal Law. When defense counsel later pressed the prosecutor for a commitment, the prosecutor refused, stating that whether or not a recommendation for life probation would be made depended upon evaluations to be made after the defendant’s co-operation. The only representation made by the prosecutor was that the evaluation would be made in "good faith” and for that the defendant would simply have to trust the Assistant District Attorney.
Between February and June, 1974, the case appeared six *787 times in a calendar part and was adjourned upon the representation made at the Bench that the defendant was "cooperating.” In July, 1974, defense counsel called the Assistant District Attorney to determine the status of the defendant’s co-operation. It was allegedly ascertained by the Assistant District Attorney that the defendant’s co-operation was less than satisfactory. However, taking the view of the pleadings most favorable to the defendant, this evaluation was not made known to defense counsel for three months. After some negotiation between counsel and conference with the court, the prosecutor agreed to allow defendant a further opportunity to co-operate with a view towards obtaining a recommendation of life probation. The defendant was reassigned to another undercover team — connected with the Drug Enforcement Administration — but within two months that agency reported its dissatisfaction with the defendant. At that point, in January, 1975, the prosecution advised defense counsel and the court, that no further co-operation would be sought from the defendant and he could either proceed to trial or accept an offered plea to the lesser offense of criminal sale of a controlled substance in the third degree.
During oral argument, the defendant has refined his contentions to a claim that he relied upon the good faith of the prosecutor and that the failure of the People to promptly notify the defendant’s counsel in July, 1974 of the unsatisfactory evaluation lulled the defense into a false sense of security and prevented it from preparing the case for trial. In an "on information and belief’ affidavit — which fails to set forth the source of the information and the grounds for the belief (see CPL 210.45) — counsel alleges two ways in which it is claimed the defendant was prejudiced.
First, in connection with a possible entrapment defense, the defendant alleges that he and his family previously frequented a named restaurant on almost a daily basis; that "on at least one, if not more * * * [occasions] * * * the cashier observed and/or heard [the defendant] attempting to avoid engaging in any activity with the informant * * * Specifically, on one such occasion in front of Tibbs Restaurant on 75th Street and Broadway, the defendant cursed at the informant, telling him to 'leave him alone’.”
The defendant’s counsel claims "on information and belief’ that the cashier would no longer be available to testify to these facts because the defendant after his arrest stopped *788 going to the particular restaurant and has had no contact with the cashier since December of 1973.
Assuming that the loss of the cashier as a defense witness would substantially prejudice the defendant’s case, the motion papers fail to factually relate the loss to any claimed improper conduct by the prosecution. From January, 1974 to June or July of that year, the defendant did nothing to locate or interview this claimed critical witness. Certainly defense counsel was aware, and chargeable with knowledge, that even if the defendant made a good faith effort at co-operation, he might not produce results substantial enough to justify the prosecutor recommending, or the court imposing life probation. Only in June or July of 1974, a point in time when the defendant claims the prosecutor knew of the defendant’s unsatisfactory performance and failed to inform defense counsel, can the People, under the defense theory, be properly charged with lulling the defense into a false sense of security. However, accepting the allegations most favorable to the defendant, this security evaporated in October, 1974. Yet, nothing was then done — or indeed is claimed to have been done to date, to ascertain the identity, whereabouts or recollection of this allegedly important witness. In view of this, it is difficult to perceive how the People’s failure to inform defense counsel during the summer of 1974 of his client’s unsatisfactory co-operation would have influenced counsel’s actions. At the very least, in order to attribute to the People the loss of this potential defense witness, the defense is obligated to show the cashier was available in June or July of 1974 but had become unavailable by October.
A second claim of prejudice made by the defendant’s counsel is that the defendant no longer knows the name of the informer who allegedly arranged the introduction of the undercover officer to the defendant, resulting in the sale which is the subject of this indictment. The defense claims that it would now, "two years after the fact” be a waste of time to investigate the informer to ascertain his background and role in the community. It is alleged that unnamed teenagers who, on information and belief, dealt with the informer in the summer and fall of 1973, are no longer available or discoverable.
The court is somewhat sceptical of the assertion that the defendant knew, but has forgotten, the informer’s name, and the implied assertion that counsel when first interviewing his *789 client neglected to ask background facts concerning the sale with which his client was charged (e.g., who was present?). Even if I accept the allegations as true, the claim must fail for the same reasons applicable to the restaurant cashier. The alleged lapse by the People in the summer of 1974 is not causally related to the defendant’s present difficulty. In denying this aspect of the motion, I have assumed that the court has the power to grant relief where an inexcusable delay has irrevocably prejudiced the defendant’s ability to defend. (See United States v Roberts, 515 F2d 642.)
The defendant’s further claim that he is being denied a recommendation for life probation because police bungling prevented his producing substantial results which would have entitled him to more favorable consideration is, in the context of this case, a nonjusticiable contention. (See People v Lofton, 81 Misc 2d 572.) The contention relates to an incident where a tape recorder failed to record one of the defendant’s attempts to set up a buy of narcotics from a suspect and an instance where the defendant claims a controlled buy failed to be consummated because of inadequate preparation. While there might be some grotesque situations where judicial intervention, "in the interests of justice” is called for, certainly this is not one.
The frequency of cases on the conference calendar over which I preside in which defense counsel make a brief at-the-bench request for an adjournment because the defendant is engaged in "co-operation” causes me to add a few words of reminder to both the People and defense counsel.
The terms of any agreement or promises should be memorialized in some kind of writing — either stenographic minutes, written agreement, letter or some other permanent record; and, as I indicated in People v Andino (80 Misc 2d 155), the negotiations with a defendant for his co-operation generally will require the presence of counsel.
The fact that a defendant is co-operating is no excuse for the defense not to pursue whatever course of activity it would otherwise follow with respect to motions, investigation, etc., since as exemplified by this case the defendant’s expectations might not be fulfilled. Representation of a co-operating defendant is not pro forma representation! While counsel may quite reasonably not wish to be involved in the law enforcement details of the defendant’s co-operation, he is obligated to keep *790 abreast of the status and quality of the defendant’s work with law enforcement.
Inasmuch as the activity involves the court’s sentencing power and the control over matters on its calendar, I will require the People in all such cases to supply the court with a written report 90 days after the defendant’s co-operation commences. Three months later the People will supply a second written report and, in addition, a written evaluation by a Supervising Assistant District Attorney. Such evaluation should reflect the defendant’s performance to date and shall contain a clear indication of the duration and scope of the defendant’s further activity. While each case obviously must be considered on its own facts, these cases will not be permitted to drag on indefinitely and there will come a point in time when the court will require both sides to resolve the outstanding charges. If that resolution is a conviction, it is the court— and not an agreement between counsel — which will determine the sentence. (See People v Campbell, reported sub nom. People vSelikoff, 35 NY2d 227, cert den 419 US 1122).
The defendant’s motion is denied.