Chief Judge Breitel.
These three appeals by defendants present issues arising from convictions based on negotiated guilty pleas. They raise the question whether a defendant may show that his guilty plea to a lesser crime was induced by an off-the-record unfulfilled promise, although contradicted by the recorded colloquy on the taking of the plea. Also at issue is whether a defendant is entitled to be sentenced as promised, or, if the court cannot or will not sentence as promised, whether the defendant is entitled to no more .than the right to withdraw his guilty plea.
In each case the order of the intermediate appellate court affirming the conviction should be affirmed.
Throughout history the punishment to be imposed upon wrongdoers has been subject to negotiation (see Comment, The Plea Bargain in Historical Perspective, 23 Buffalo L. Rev. 499, 500-501). Plea negotiation, in some form, has existed in this country since at least 1804 (see p. 512). Even in England, where there are no public prosecutors, no inflexible sentencing standards, and considerably less pressure on the trial courts, a limited form of plea negotiation seems .to be developing (compare Cooper, Plea Bargaining: A Comparative Analysis, 5 N. Y. U. Journal of Int. Law & Politics 427, 435; Thomas, Plea Bargaining and the Turner Case, 1970 Grim. L. Rev. [Eng.] 559, 561-565 with Davis, Sentences For Sale: A New Look at Plea Bargaining in England & America, 1971 Grim. L. Rev. [Eng. 3 *233 150, 223, 225). Moreover, convictions upon guilty pleas, pleas probably to lesser crimes, have been high since 1839 both in rural, where there is little trial court congestion, and in urban areas, where there is much congestion (Nineteenth Annual Report of N. T. Judicial Conference, 1974, A-97-A-99, A-129; Moley, The Vanishing Jury, 2 So. Calif. L. Rev. 96, 107, 109). History and perspective suggest, then, that plea negotiation is not caused solely, or even largely, by overcrowded dockets. This is not to say, however, that plea negotiation is not acutely essential to relieve court calendar congestion, as indeed it is (U. S. President’s Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, 135 [1967]). In budget-starved urban criminal courts, the negotiated plea literally staves off collapse of the law enforcement system, not just as to the courts but also to local detention facilities.
Plea negotiations, of course, serve many other needs. They relieve the prosecution and the defense too, for that matter, from “ the inevitable risks and uncertainties of trial ” (U. S. President’s Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, 135 [1967]). The negotiation process which results in a guilty plea telescopes the judicial process and the necessarily protracted intervals involved in charge, trial, and sentence, and even appeals, hopefully starting the offender on the road to possible rehabilitation (see Santobello v. New York, 404 U. S. 257, 261; Brady v. United States, 397 U. S. 742, 752; American Bar Association Project on Minimum Standards For Criminal Justice, Standards Relating to Pleas of Guilty, 40-41 [1968]). The process also serves significant goals of law enforcement by permitting an exchange of leniency for information and assistance (TI. S. President’s Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 10 [1967]).
Perhaps most important, plea negotiation serves the ends of justice. It enables the court to impose “ individualized ” sentences, an accepted ideal in criminology, by avoiding mandatory, harsh sentences adapted, to a class of crime or a group of offenders but inappropriate, and 'even Draconian, if applied to the individual before the court (Newman, Conviction: The *234 Determination of Guilt or Innocence Without Trial, 112-115 [1966]). Obviously no two defendants are quite alike even if they have committed, in legal definition, identical offenses. The negotiation process often brings to light mitigating circumstances unknown when the defendant was charged (Enker, Perspectives in Plea Bargaining, in Appendix A to IJ. S. President’s Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 110).
“ [C]riminal conduct must be described in generalized terms. The rules must sweep together identical acts with their markedly different actors amid infinitely variable circumstances. So, as the chancellor and the general verdict of the jury softened the impact of common law rules in the civil law field, so discretion functions to provide the selectivity needed in criminal law enforcement. Thus, the respectable businessman who inadvertently carries a pistol across state lines need not be treated as the gangster who is caught with an unlicensed revolver. Nor need the nurse who technically violates the narcotics law be treated as a criminal because she unwisely administered to a patient in excruciating pain. * * *
“ [T]here is the much-maligned, but almost universally used, discretion by prosecutors and courts in accepting lesser pleas. * * * It is sometimes a finer adjustment to the particular crime and offender than the straight application of the rules of law would permit. ’ ’ (Breitel, Controls in Criminal Law Enforcement, 27 Univ. Chicago L. Rev. 427, 431-432; see, also, Newman, Conviction: The Determination of Guilt or Innocence Without Trial 112-129 [1966], op. cit.)
Plea negotiations serve other laudable purposes (see Newman, Conviction: The Determination of Guilt or Innocence Without Trial 105-111, op. cit.-, Enker, Perspectives in Plea Bargaining, in Appendix A to Task Force Report, 109-110). Like procedures to protect the integrity of the fact-finding process at trial, still-developing modern practices are available to assure the integrity of the guilty plea (see, e. g., People v. White, 32 N Y 2d 393, 399-400; People v. Flowers, 30 N Y 2d 315; People v. Nettles, 30 N Y 2d 841; see, generally, People v. Nixon, 21 N Y 2d 338*; American Bar Association Project on Minimum *235 Standards For Criminal Justice, Standards Relating to Pleas of Guilty, §§ 1.5-1.7). Where a defendant denies guilt, or if the court believes defendant may be innocent, and the guilty plea is not otherwise justified as knowingly and intelligently made, the guilty plea may be and should be rejected (see, e.g., People v. Beasley, 25 N Y 2d 483; People v. Nixon, 21 N Y 2d 338, 351, supra; People v. Serrano, 15 N Y 2d 304; see, also, North Carolina v. Alford, 400 U. S. 25, 31-39).
In People v. Selikoff, the first of the three appeals before the court, defendant, in Westchester County Court, pleaded guilty to second degree grand larceny in full satisfaction of 38 counts in three indictments arising out of a complicated real estate ‘6 swindle ’ ’. Defendant also pleaded guilty to obscenity in the second degree in satisfaction of another fourth multicount indictment. In accepting the guilty pleas, the pleading court stated on the record that based on the representations made by the prosecution and defense counsel, as well as on the facts known to him, it was his then opinion that no sentence of imprisonment would be imposed. Subsequent to the pleas, the same Judge presided at the trial of the codefendants. As the result of his experience in the trial, the Judge concluded that the pleading defendant’s role in the fraudulent scheme had not been peripheral, as he had been advised during the plea negotiations, but that defendant had been a principal participant. The presentence report stated that defendant denied both his role in the fraud and his guilt of the obscenity charge.
On sentence, based upon his later information and views, the sentencing Judge stated that he could not and would not perform his conditional promise of no imprisonment. He offered defendant an opportunity to withdraw his guilty pleas. Defendant rejected the opportunity and insisted on performance of the “ promise ”. Consequently, the court sentenced defendant to an indeterminate five-year sentence on the grand larceny charge and a $1,000 fine on the obscenity charge. The Appellate Division affirmed the convictions (41 A D 2d 376).
In People v. Campbell, the second appeal before the court, defendant, after a preliminary hearing on charges of felony drug possession, was held for action by the Grand Jury. Thereafter, at direction of the Grand Jury, a prosecutor’s information charging only misdemeanor drug offenses was filed in New York *236 City' Criminal Court. Following negotiations between defense counsel and the prosecutor, the charges were reduced to loitering for the purpose of using or possessing a dangerous drug (Penal Law, § 240.36). The prosecutor stated on the record that he would recommend to the court that no prison sentence be imposed, and, supposedly, off-the-record, he had stated to defendant and his counsel that if it were imposed, then the People would not oppose a motion to withdraw the plea. The full negotiations and agreements were not on any record and the last conditional promise was never disclosed to the pleading court.
When arraigned for his guilty plea, defendant stated that the only promise which induced his plea was that the People would recommend a fine or probation. Defendant, in response to a question, asserted that there were no other promises. The prosecutor, who had handled the plea negotiations, made the record inquiries of defendant, and stated that the only promise had been that the People would recommend probation or a fine. The pleading court, however, informed defendant, in emphatic terms, that the prosecutor’s recommendation was merely advisory and in no way binding upon the court. Defendant was also informed that a prison sentence might well be imposed, if, after reading the presentence report, the court deemed it proper. The court asked whether this was understood and the defendant gave an affirmative response. The court also inquired whether defendant still wished to plead guilty or did he wish to £ £ withdraw ’ ’ his plea. Defendant stated that he still would plead guilty. At sentence, the court, in light of the 69-year-old defendant’s extensive criminal narcotics record, consisting of 27 arrests or convictions, advised that he would impose a three-month sentence of imprisonment. The prosecutor immediately informed the court of the prior undisclosed arrangement by which the People would not, in the event of a prison sentence, oppose a motion by defendant to withdraw his guilty plea, and that defendant ££ would be permitted to withdraw his plea ”. The court pointed out that it had made no such promise and nothing was said of such a ££ promise ” when the plea was entered. (For what it is worth defense counsel never made a formal motion to withdraw the guilty plea.) The court sen *237 teneed defendant to a term of three months. The Appellate Term unanimously affirmed the conviction.
In People v. Davidson, the third of the appeals before the court, the defendant was charged, in New York County, with murder and in a second indictment with an unrelated larceny. Defendant pleaded guilty to second degree manslaughter in satisfaction of both indictments. Before entry of the plea the court, defense counsel, and the prosecutor engaged in ^n off-the-record discussion. On the record, the court told the defendant that as it then understood the facts, and contingent upon the presentence report, sentence would be no greater than from 3 to 10 years. If after reading the presentence report, the court found that it could not impose that sentence, defendant would be permitted to withdraw his guilty plea.
Defendant was asked by the court if any other promises had been made and he replied in the negative. The guilty plea was then accepted. At sentence, defendant was sentenced for a term of 3 to 10 years, precisely as had been contingently “ promised ” on the taking of the guilty plea, according to the record.
The Appellate Division affirmed the conviction (40 A D 2d 628). Leave to appeal to this court was denied.
Defendant twice unsuccessfully sought postconviction relief in the nature of coram nobis. Shortly after the first application the sentencing Judge died. The second application, supported only by defendant’s affidavit, alleged an unfulfilled promise by the then deceased Judge. In due course, defendant sought reargument of the second application, this time supported by an affidavit from his attorney at time of plea and sentence. The substance of the attorney’s affidavit was that the sentencing court had told the attorney that defendant would receive a maximum of four years, a flat contradiction of the deceased Judge’s statements on taking the guilty plea. The affidavit further averred that defendant had been so informed and upon such information had entered his guilty plea. The application was denied without a hearing, and the Appellate Division affirmed (42 A D 2d 957). The present appeal concerns this second postconviction application.
Significant factors suggest affirmance in the Selikoff case. While the court, unlike that in the Davidson case (vide supra), *238 did not expressly condition the prospective sentence upon his information at the time of plea, the pleading Judge stated that the prospective sentence was based on information then known and representations then made. By the strongest necessary implication, the court was indicating the conditional foundation for the ‘ ‘ promise ’ ’. There are, however, policy considerations which go beyond the literal reading of the plea minutes. A penal sanction has, at least, the purposes of deterrence, rehabilitation, and social protection. To enable the court to perform its function, the statute mandates, and it is the public policy of this State to require, a presentence report before sentence be imposed (CPL 390.20, subd. 1; People v. Aiss, 29 N Y 2d 403).
A Judge may not ignore those provisions of law designed to assure .that an appropriate sentence is imposed (cf. People v. Lopez, 28 N Y 2d 148, 151). Thus, any sentence “ promise ” at the time of plea is, as a matter of law and strong public policy, conditioned upon its being lawful and appropriate in light of the subsequent presentence report or information obtained from other reliable sources. That the court in the Selikoff case did not explicitly condition its “ promise ” (although the implication could hardly be clearer) upon its later evaluation after reading the presentence report, or the facts it learned from the trial of the codefendants, is therefore of no consequence.
In demanding “ specific performance ” of the promised sentence defendant would apply commercial contract law to plea negotiation. (Interestingly enough, if contract law were applicable, the negotiations would probably not have produced a binding agreement, either for fraud in the inducement or for unilateral mistake knowingly snffered to occur by defendant.) Application to plea negotiations of contract law is incongruous. The strong public policy of rehabilitating offenders, protecting society, and deterring other potential offenders presents considerations paramount to benefits beyond the power of individuals to “ contract ”. Even if the contract analogy were apt defendant would be seeking enforcement of a “ bargain ” violative of the statute and the public policy requiring a presentence report before sentence.
Defendant Selikoff was afforded an opportunity to withdraw his plea of guilty. This opportunity he was entitled to receive *239 since the foundation for the plea, regardless of fault, had proven to be without substance. The record does not disclose any change of position by defendant, other than what occurs on any plea of guilty. Circumstances conceivably might rise which, in justice, would require granting a defendant the consideration he was advised he would receive at the time of his guilty plea. But, notably, in the very rare situations (not to be encouraged if only for the delay it would entail and the perhaps premature disclosure by defendant) where it may be desirable to have a firm sentence commitment in advance of sentence the court may order, and the defendant may request, a presentence report before the plea is accepted (CPL 390.30, subd. 3; see, also, U. S. President’s Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 13). Had defendant Selikoff exercised his option to withdraw the guilty plea, he could have requested that the trial be presided over by a Judge other than the one who had received the guilty plea (cf. Santobello v. New York, 404 U. S. 257, 263, supra; People v. Barner, 39 A D 2d 985; see U. S. President’s Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, 136).
The views expressed are consonant with the rationale and holding in Santobello v. New York (supra). There, the Supreme Court held that the failure of a prosecutor to honor his off-the-record promise to make no sentence recommendation rendered invalid the guilty plea induced by the promise. The court left it to the discretion of the State courts whether either to aEow defendant to withdraw his plea, or to fulfill the aborted promise by vacating the sentence and remanding the proceedings for resentence before a different Judge, without a prosecutor’s sentence recommendation. On remand, the Appellate Division vacated the sentence and returned the case to the Supreme Court for resentencing (39 A D 2d 654). The Santobello case and the AppeEate Division determination on remand to it suggest that the failure or inability to fulfill a promise requires either that the plea of guilty be vacated or the promise fulfilled, but there is no indicated preference for one course over the other. The choice rests in the discretion of the sentencing court.
People v. Esposito (32 N Y 2d 921) is not to the contrary. In that recent case this court ordered fulfillment of a sentence *240 promise because, as matters had eventuated, to allow withdrawal of the plea would have given to defendant more than he was entitled. In Esposito, vacating the plea may well have resulted in dismissal of the charges because of the difficulty, if not inability, of the prosecution to locate the witnesses necessary for trial of the then stale indictments. These difficulties were noted by the Appellate Division (see 40 A D 2d 801, 802).
Of course, courts may continue, on the pleading record, to indicate the sentence they expect to impose. The promise must be fulfilled provided there is nothing contained in the presentence report or in later learned facts rendering improvident the sentence promised (see People v. Griffith, 43 A D 2d 20, 23, 25). Where a court cannot or will not impose the sentence previously promised it should specify on the record the information contained in the presentence report or any other circumstance relied upon for its changed view (American Bar Association Project on Minimum Standards For Criminal Justice, Standards Relating to Pleas of Guilty, § 3.3 [b]). Thus, arbitrariness or trifling with the legitimate expectations of pleading defendants may be avoided and the matter will be subject to appellate review.
In the 8elikoff case, the record shows that the court in promising no imprisonment, relied upon what it was led to believe to be the minimal involvement of defendant. Upon subsequently discovering that defendant was a major piece rather than a pawn in the fraudulent scheme, the court acted quite correctly in refusing to impose the promised sentence but allowing defendant to withdraw his guilty plea. The case demonstrates that it is useful for the pleading court to note on the record its reasons or qualifications in proposing to impose any given sentence.
Bearing on the Selikoff case, and also on the two other cases to be discussed, is a fundamental that ought to be obvious. If the plea negotiation were to result in a unilateral “ agreement ” for a sentence, there would be little or no point in not proceeding immediately to sentence. There would also be little or no point in having a presentence report and requiring the sentencing court to view the report before sentence.
In People v. Campbell, a novelty is injected: The prosecutor agrees with defendant that a promise was made to which the pleading court was not made privy. Sentence is primarily a *241 judicial responsibility. In requiring the court’s and the prosecutor’s joint consent to any plea to an offense less than that charged, the Legislature sought to prevent collusive and corrupt arrangements, a. condition rife before the joint control statutes were enacted (see Matter of McDonald v. Sobel, 272 App. Div. 455, 460, affd. 297 N. Y. 679). Any .attempt to undermine judicial control in the sentencing process must be rejected as must be any attempt to undermine the prosecutor’s responsibility in recommending lesser pleas. The doncern with collusive or corrupt arrangeménts is a persistent one (see Matter of Murtagh v. Maglio, 9 A D 2d 515, 520; see, also, Denzer, Commentary, McKinney’s Cons. Laws of N. Y., Book 11A, CPL 180.50, at p. 70).
Of course, a guilty plea induced by an unfulfilled promise either must be vacated or the promise honored (Santobello v. New York, 404 U. S. 257, 260, supra). The District Attorney concedes that the arraignment prosecutor’s promise did induce defendant’s plea of guilty. That promise should be treated, in substance, although it was not in that form, that defendant would be permitted to withdraw his plea if a prison sentence were to be imposed. Withdrawal of a plea, however, is not within the power of the prosecutor, That power rests solely in the discretion of the court (CPL 220.60, subd. 4). The prosecutor, without authority, promised that which he could not legally perform and the defendant, therefore, could not, as a matter of law, rely on that promise.
The lack of power in the prosecution distinguishes the Campbell situation from that involved in Santobello v. New York (404 U. S. 257, supra). In that case a prosecutor promised not to recommend a prison sentence, a promise which could be fulfilled because the prosecutor has the power, although he may choose not to exercise it, to make recommendations on sentence. In Santobello, another assistant prosecutor breached the promise by recommending a prison sentence.
Moreover, the record, upon which the pleading court relied and had a right to rely, contradicts the concession by the District Attorney and the contention by defendant, that the plea was induced by the off-the-record promise. The defendant was expressly asked whether his plea was induced by a promise other than that the prosecutor would recommend no imprisonment. *242 He unequivocally responded that there were no other inducements. Moreover, the pleading court made it clear that the prosecutor’s record recommendation, limited as it was, was in no way binding upon the court. Defendant was told plainly and bluntly that if the presentence report justified a prison sentence, then one would be imposed. At this point defendant was given and refused the opportunity to withdraw his guilty plea. The detailed recorded plea arraignment here is unlike some minimal pro forma questioning which perhaps should not bar a defendant from reopening the matter despite a superficially contradictory record (see United States ex rel. Oliver v. Vincent, 498 F. 2d 340, 342, n. 1; Hilliard v. Beto, 465 F. 2d 829, 830-831, vacated and remanded 494 F. 2d 35). In this case, however, the court was knowingly misled ‘by the assertions of both counsel and defendant, if their present assertions are to be accepted.
A defendant, sophisticated in the criminal process, who has misled, or lied to the court, should not, at least on this record, be heard to contend that his plea was induced by an off-the-record promise. That defendant may have acted upon the advice of counsel, or with the connivance of a prosecutor, should not alter the result. Whether counsel’s advice amounted to a denial of effective counsel is not presented by this appeal. That the prosecutor also misled or perhaps even lied to the court is to be deplored, but, on this record, should be of no help to defendant if only because it permits a connivance which is not tolerable.
If there be an injustice in this case, the remedy lies in a different proceeding and a different approach (vide infra). What is important is that the integrity of the very delicate process of plea negotiation with its potential for corruption be preserved and not be threatened by off-the-record promises, representations, implications and the like, without any kind of written memorial, on or off-the-record, and, worst of all, deliberately (or even inadvertently) concealed from the court. The danger is enhanced, and existing safeguards rendered futile, if the detailed inquiry by a conscientious court, as occurred in this ease, is assailable, The pleading court indeed made full inquiry, a purpose to be encouraged and highly recommended (American Bar Association Project on Minimum Standards For Criminal Justice, Standards Relating to Pleas of Guilty, §§ 1.5, 1.6, 3.3; *243 see, also, American Law Institute Model Code of Pre-Arraignment Procedure, § 350.5, subd. [1]; § 350.8 [Tent. Draft No. 5, 1972]).
On oral argument in this court, the District Attorney urged that the underlying evidence for the charge made it extremely doubtful that defendant could have been convicted on trial. Indeed, defendant, despite his record, may have been innocent of any wrongdoing on this charge. Postconviction procedures are, however, available to correct any injustice, without undoing what is good in plea-talcing practice, and in any such proceeding defendant would not be barred from showing, among other possibilities, that in the off-the-record plea negotiations he was misled into not protesting his innocence. At such stage of the matter defendant may be entitled to go free for innocence and not because of a shared deception on the court at plea taking.
The Appellate Term, in affirming, stated in part, quite aptly: “ If, as the defendant, seconded by the district attorney, now urges, there was a covert agreement between prosecution and defense that if a jail sentence were imposed the defendant would be permitted to withdraw his plea, then, at the moment of that searching alternative proposal of choice, ‘ do you still nevertheless wish to plead guilty or do you wish to withdraw the plea of guilty ’; then was the time that defendant, his counsel and the district attorney were under a compelling duty to the court and to the People to speak. Their silence in the face of the court’s trenchant statement in unmistakable terms of the precise basis of its approval; their failure to then and there repudiate or modify the defendant’s statement ‘ I still plead guilty,’ must be construed as full concurrence in the tacit joint representation that no other undisclosed term of agreement, different from the court’s express understanding, existed between them. Neither the defendant, nor the district attorney, nor both of them will now be heard to say to the contrary. To hold otherwise is to make the role of the court in overseeing and supervising the delicate balancing of public and private interests in the process of plea bargaining a meaningless exercise and to deny the need for judicial approval as a salutary check against the danger of too ready abuse in this highly sensitive area of the administration of criminal justice.”
*244 Even where the entire plea agreement and any promised sentence are purportedly placed on the record, there may still be no end to claims of off-the-record promises. This is demonstrated by the third appeal before the court.
In People v. Davidson, the pleading court meticulously placed the promised sentence on the record and the defendant agreed that this was the only promise made. The “ promise ” was fulfilled precisely. Thus, any claim of an inconsistent off-the-record promise, by a deceased Judge, is flatly contradicted by the record.
On pleading, as recorded in the minutes, all agreed that defendant would receive a sentence from 3 to 10 years. There was detailed inquiry by the pleading court. Now defendant and his then lawyer aver that the Judge, off-the-record, had promised that he would not sentence defendant for more than four years. It is an incredible story. But even if the averments retained some “ scintilla ” of credibility it would merit no judicial recognition because of its effect on the plea negotiation process. The desirability of encouraging exposure on the record of what has been said, what has been agreed, and what conditions exist before performance of a “ promise ” may be relied upon, would be utterly negated.
In refusing to order a hearing the coram nobis court properly exercised its discretion by impliedly finding that under all the “ circumstances attending the case, there [was] no reasonable possibility that such allegation is true ” (OPL 440.30, subd. 4, par. [d]).
These cases demonstrate the desirability of having as complete a record as possible of the agreements and promises which have led to a guilty plea. The usefulness of the practice will depend upon according reliance to the record and disclosures to the court. On the other hand, there is no precise catechism to insulate the practice from subsequent attack. But it may also be said that a mechanical catechism is entitled to no reliance either.
Most often, many difficulties attending the plea negotiation process may be eliminated by placing the entire agreement on the record and insuring that all parties realize that, in all but the most unusual circumstances, no other purported agreement will be recognized. This would make for a sound general practice but it is not suggested that an absolute rule is desirable. *245 Absolutes, however well intentioned, have a perverse way of turning into plagues.
Accordingly, the orders in each of the appeals should be affirmed.
In People v. Selikoff and People v. Campbell: Order affirmed.
Judges Gabrielli, Jones, Wachtleb, Babin, Stevens and Witmeb* concur.
In People v. Davidson: Order affirmed.
Judges Gabrielli, Jones, Wachtleb, Babin and Witmeb* concur; Judge Stevens taking no part.

 See cert. den. sub nom. Robinson v. New York (393 U. S. 1067).

 Designated pursuant to section 2 of article VI of the State Constitution.