■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK SPENCER, Appellant. — Appeal from judgment of Supreme Court, New York County (Danzig, J.), rendered February 20, 1979, convicting appellant upon his guilty plea, of robbery in the first and second degrees and burglary in the second degree and assault in the second degree and sentencing him to concurrent indeterminate terms of imprisonment not to exceed eight years, and appeal from order of said court (Moldow, J., at hearing and oral order; Sandifer, J., on written order) entered on April 30, 1981, denying appellant's motion to obtain specific performance of an alleged promised sentence or, in the alternative, for a hearing to determine entitlement to such relief, held in abeyance and the matter remanded for a hearing to determine whether or not a promise as to sentence was made at the time appellant pleaded guilty to the entire indictment. Defendant's conviction stems from his forcible entry into an apartment (together with an unapprehended accomplice) occupied by two elderly women. Inside the apartment, the culprits beat and gagged their elderly victims and then fled with money and property. Following denial of defendant Spencer's motion to suppress identification and statement evidence, an off-the-record discussion concerning a plea disposition was had with the hearing court (Danzig, J.). At this time, the court indicated that five years seemed just, a position vehemently objected to by the Assistant District Attorney who would not consent to a plea in satisfaction of the indictment. Thereafter, the parties went back on the record and defendant offered a plea to the entire indictment, which, of course, did not require consent of the People (CPL 220.10, subd 2). However, it is not clear what persuaded the defendant to expose himself to the peril of such a broad confession of guilt. Nevertheless, it is apparent that the court and counsel were punctilious in adhering to all the legal catechisms designed to sanctify the plea and sentence. Defendant acknowledged discussing his decision with defense counsel. This is acknowledged by Spencer's counsel, as well. The court painstakingly apprised defendant of the rights he was waiving. He made sufficient inquiry to assure that the record formally reflects that the plea was the result of defendant's voluntary act. Spencer expressly stated that no one, including the court, promised a specific sentence. Indeed, at the start of the plea proceedings, the court made it explicit that any promise as to sentence would be premature since the probation report would have to be consulted. At sentence, on February 20, 1979, the People requested a substantial term of imprisonment. Defense counsel noted the pressure placed on the court to impose a sentence greater than the off-the-record five-year sentence which the court, during plea negotiations, thought fair. However, once again defense counsel stated that no firm commitment as to sentence was made. The court then imposed concurrent zero- to eight-year sentences on one count each of robbery in the first and second degrees and dismissed all other counts of the indictment as lesser included offenses. There followed defendant's CPL 440.20 motion to vacate sentence. Two grounds were asserted in support of the motion: (1) that there was an enforceable sentence promise of zero to five years; (2) improper interference with the sentencing court's discretion, resulting from media attention; elderly victims' demonstrations; and another Justice's advice to the sentencing court to impose a sentence greater than five years. Spencer was offered, but rejected, the opportunity to take back his plea on the basis of the "outside interference" and withdrew that branch of the CPL 440.20 motion asserting this as a grounds for vacatur. However, the other branch of the motion seeking specific performance of an alleged five-year

sentence promise was not withdrawn. A direction for a hearing on this issue was made by Justice George Roberts. The matter was referred to Justice Moldow for that purpose. He denied the motion without a hearing on the ground that it was unnecessary. These appeals followed. Defendant argues that he was promised a sentence of not more than five years but that improper influences on the sentencing Judge, rather than the presentence report, were responsible for the longer sentence. If such a sentence promise was in fact made, the law is clear that defendant is entitled to have it enforced, as he insists. (See *People v Selikoff*, 35 NY2d 227, at p 239.) This court is troubled by the defendant's claim that a promise was made by the court which motivated him to plead guilty to all the counts of the indictment. It was for the purpose of resolving this question that a direction for a hearing was initially made. Unfortunately, however, the motion for a hearing was ultimately denied. It is clear that an express promise as to sentence was not made by the Judge. And it is beyond cavil that the Judge conducted the allocution so that defendant and his counsel spread across the record a repudiation of any promise. Unfortunately, ritualistic representations do not always reflect the reality of what transpires. The sequence of events, the nature of those events, in the circumstances of this case, raises a question of whether the acts of the parties spell out an implied promise to the defendant upon which he could rely and which is enforceable. Absent such a promise there is nothing to specifically enforce. Considering the crimes perpetrated against the elderly victims, it can hardly be said that an eight-year sentence, when a sentence of 25 years was permissible, is an abuse of discretion. Accordingly, the appeal of the judgment of the Supreme Court, New York County, rendered February 20, 1979, is held in abeyance pending the hearing. Concur — Sullivan, Fein and Asch, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I dissent and would affirm. There is no purpose in a hearing. Obviously, when the original plea disposition was being discussed, the Judge, Stanley P. Danzig, J., having indicated that five years seemed to him a reasonable sentence for the plea, the defendant assumed with great expectations that the Judge would impose such a sentence. To hold a hearing now when Judge Moldow is deceased and Judge Danzig has left the Bench, is the equivalent of reading tea leaves for psychic phenomena. In view of the need for reducing delay in criminal matters set forth in Chief Judge Lawrence H. Cooke's plan to speed trials (NYLJ, Jan. 27, 1982, p 1, col 3, p 2, col 3 *et seq.*), this is just one more unneeded imposition on an overcrowded system. There not having been any specific commitment by the Judge and, in fact, there having been colloquy which made perfectly clear that there was no such commitment, this attempt at extrasensory perception for an "unarticulated hunch" (see Criminal Sentences, by former Federal Judge Marvin E. Frankel [Doubleday, 1973], p 108) merely confuses the situation. At the time that Judge Danzig considered that five years might be adequate for a crime in Tudor City, which all members of this Bench agree justified the sentence of eight years finally imposed, Justice James Leff, a leading exponent of criminal justice swift and sure, stated that a sentence so low would be idiotic. It is considered only fair in modern penology, in order to have sentences which jibe with that for other crimes and criminals, that there be a consultation with colleagues. This possibility could have instigated a reexamination by Judge Danzig of his initial impression leading to a result which, as the majority here says, "can hardly be said * * * is an abuse of discretion." Nonetheless, to ascertain this would have no effect on the final determination, and so a hearing would be fruitless and supererogatory.