■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCINE GOTT-FRIED, Appellant. — Judgment, Supreme Court, New York County (Rothwax, J.), rendered on December 22, 1981, affirmed. Ross, J., concurs in a memorandum with which Kupferman, J. P., concurs; Sandler, J., concurs in a separate memorandum and Carro and Asch, JJ., each dissent in a separate memorandum.

Ross, J. (concurring). On February 1, 1981, the defendant, an admitted drug pusher, during an argument with her drug supplier, Louis Gompertz (Gompertz), relative to obtaining more marihuana to sell, shot him to death. Then the defendant went through Gompertz' pockets, while he lay dying, and removed his keys and $25. After this, she left Gompertz' apartment. Later on she told her friends that she had killed and robbed Gompertz. Defendant tried to conceal her connection to the crime by tossing her gun and the deceased's keys into the river. When the deceased's body was found it contained five bullet holes, one in the head and four in the back. Incidentally, the defendant told her counsel "that the victim might have been saved if she had called an ambulance immediately". Even before murdering Gompertz, defendant admitted that she was frequently armed with a pistol as she carried out her daily activities. At the time she killed Gompertz, the defendant was between 18 and 19 years old. According to her counsel, defendant, before this incident, had developed a tough, hard, street image; and, after this incident, without remorse, she boasted that "she had a friend who killed people and it was easy to make bail if arrested". Defendant was apprehended and was thereafter indicted in March, 1981 for two counts of the crime of murder in the second degree (Penal Law, § 125.25, subds 1, 3). Subsequently, the defendant pleaded guilty to the crime of manslaughter in the first degree in exchange for a promise from the court that her sentence would not exceed 8⅓ to 25 years. Our examination of the plea minutes leads us to conclude that defendant freely and knowingly made this plea, after consultation with her counsel. Before imposing the bargained-for sentence, the sentencing court said: "I believe you [defendant] are genuinely sorry. Unfortunately being sorry doesn't bring back the deceased in this particular case * * * The deceased in this case was shot five time [sic]. It bore some of the earmarks of an execution * * * [A] significant penalty must be imposed where the underlying circumstances are as serious as they are here". Based upon this record, we find that at no point did the sentencing court feel that he was under any pressure to surrender his discretion. In fact, during the proceeding, the sentencing court said: "If I felt that it [the sentence] was without the range of reason, if I felt that was an unjustifiable position, I would not have taken the plea * * * I cannot say that the sentence agreed upon is an unreasonable one. I indicated to both parties in the light of the facts that were known to me, which had not been modified by later events, that that is a sentence that I am prepared to impose". It is not necessary to argue against the dissent's conclusion as to the significance or meaning of *People v Farrar* (74 AD2d 547, mod 52 NY2d 302). Here there is no indication that the sentencing Judge concluded that he had no discretion, and that he had to comply with the District Attorney's demands. In fact, when the defendant's attorney inferred that the court may feel constrained by the terms of the plea bargain, Justice Rothwax replied: "I had no pressure that was brought on me". It is obvious that *People v Farrar* (*supra*), gives no support to the dissent's position. We are as sensitive to human tragedy as our dissenting brother. However, unlike our dissenting brother, we do not perceive our reviewing role to be one of acting "as a *de novo* sentencing tribunal" (*People v Whiting,* 89 AD2d 694). In reviewing a sentence alleged to be excessive, it is our function to determine whether there has been an abuse of discretion by the sentencing Judge. We hold that there has been no abuse of discretion (*People v Junco,* 43 AD2d 266, affd 35 NY2d 419, cert den 421 US 951).

Sandler, J. (concurring). I agree with the court that the totality of factors disclosed in this case does not justify the exercise of this court's power under CPL 470.20 (subd 6) to reduce the sentence fixed as a matter of discretion in the interest of justice. Nor do I see any reason to doubt that the experienced

Trial Judge was fully aware of the options available to him under *People v Farrar* (52 NY2d 302), and imposed the sentence appealed from in the conscientious view that it was an appropriate one. I further agree with the view implicit in the court's opinion, and explicitly affirmed in the dissenting opinions, that *People v Farrar* (*supra*), did not directly, or by implication, limit the power of intermediate appellate courts explicitly set forth in CPL 470.20 (subd 6) to reduce clearly excessive sentences in the interest of justice. It would take a far clearer signal than any I perceive in *People v Farrar* to persuade me that this court's discretionary power, in compelling circumstances, to reduce aberrationally harsh sentences is now to be confined by commitments made by Trial Judges in the course of plea bargaining. I share Justice Carro's concern at the development of the last several years that has seen the power to sentence defendants effectively transferred from Judges to prosecutors in a significant number of cases. This development, one of the most important in recent years in the criminal justice system, has occurred with disturbingly little attention or analysis. In *People v Farrar* (*supra*), although strongly reaffirming the power and duty of Judges to sentence in accordance with their conscientious judgment, the Court of Appeals in effect upheld the right of prosecutors to exact from Judges, in exchange for the prosecutor's agreement to a plea to a lesser charge, a commitment to fix a sentence desired by the prosecutor. It is an underlying reality in many criminal cases that defendants have no practical alternative to accepting the plea bargain proposed by prosecutors, and that Judges are effectively constrained to make the requested commitment even though they may doubt the appropriateness of the required sentences. Undeniably the conceptual analysis in *Farrar* was compelling in light of the present statutory framework and the rules of law that had previously developed with regard to sentencing promises by Judges. To what extent the appeal in *Farrar* informed the Court of Appeals adequately as to the breadth of the development that was occurred is unclear. In my opinion this development is of such importance as to invite, indeed require, careful and comprehensive professional and scholarly study and analysis. If, as I expect, such studies confirm that prosecutors have assumed a sentencing power which is inappropriate for them to exercise, and for which they are often not qualified, a groundwork will have been established for remedial legislative action.

Carro, J. (dissenting). In *People v Selikoff* (35 NY2d 227), the Court of Appeals rehearsed the duties of the trial court in accepting a negotiated plea of guilty, and subsequently in imposing sentence. "A Judge may not ignore those provisions of law designed to assure that an appropriate sentence is imposed (cf. *People v. Lopez,* 28 NY2d 148, 151). Thus, any sentence 'promise' at the time of plea is, as a matter of law and strong public policy, conditioned upon its being lawful and appropriate in light of the subsequent presentence report or information obtained from other reliable sources". "Sentence is primarily a judicial responsibility * * * Any attempt to undermine judicial control in the sentencing process must be rejected as must be any attempt to undermine the prosecutor's responsibility in recommending lesser pleas" (pp 238, 240-241). This court took the above language at face value and, in *People v Maldonado* (70 AD2d 308, 310), wrote that "in the light of *People v Selikoff* (*supra*), the Judge is not bound by his promise to the prosecutor." Likewise, in *People v Farrar* (74 AD2d 547), we vacated a sentence where the lower court had failed to exercise its independent discretion because the prosecutor had incorporated a stiff sentence into the plea bargain. The Court of Appeals modified "to the extent of directing that the People be given the opportunity to withdraw consent to the plea in the event a lesser sentence is to be imposed" (52 NY2d

302, 305 [per Cooke, Ch. J.]). The effect of this decision has been to overrule *Maldonado* and completely do away with the sentencing court's discretion in all plea bargain cases, save those involving an "open plea." To be sure, the Court of Appeals disclaimed this result when it wrote (pp 305-306): "Rejected at the outset is the proposition that the court, by its purported commitment to the prosecutor at the time of the plea, can be bound to impose a particular sentence. Such an approach fails to recognize the underlying principle applicable to all these situations — that the sentencing decision is a matter committed to the exercise of the *court's* discretion and that it can be made only after careful consideration of all facts available at the time of sentencing. The determination of an appropriate sentence requires the exercise of discretion after due consideration given to, among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, i.e., societal protection, rehabilitation and deterrence (see *People v McConnell*, 49 NY2d 340, 346; Penal Law, § 1.05, subd 5). The law and strong public policy of this State mandate that the court, detached from outside pressures often brought to bear on the prosecution and defense, make that determination. Quite simply, the court must perform the delicate balancing necessary to accommodate the public and private interests represented in the criminal process. Contrary to the People's argument, the court cannot be deemed to have finally exercised its discretion at the time that the plea, with the proposed sentence, is accepted. While the court legitimately may indicate that a proposed sentence is fair and acceptable, the necessary exercise of discretion cannot be fixed immutably at the time of the plea, for the decision requires information that may be unavailable then. Indeed such a view of the plea bargaining process and sentencing function was expressly disapproved in *People v Selikoff* (35 NY2d 227)." This rings out like a strong reaffirmation of *Selikoff*, and the court was probably mindful of Chief Judge Breitel's warning that "[a]bsolutes, however well intentioned, have a perverse way of turning into plagues". (*People v Selikoff*, 35 NY2d, *supra*, at p 245.) Accordingly, the court announced its rule as a conditional one (pp 307-308): "Where the record shows that the prosecutor's consent to a plea is premised on a negotiated sentence and a lesser sentence is later deemed more appropriate, the People should be given the opportunity to withdraw their consent. However justified the court's unwillingness to impose the negotiated sentence, fairness dictates that this avenue be left open. Of course, this is not to say that the People's application must be granted in all cases, for, among other things, prejudice to a defendant following a plea may prevent restoration to *status quo ante* and render vacatur of the plea inappropriate (see *People v McConnell*, 49 NY2d 340, *supra*). Absent defendant's showing of such prejudice or other circumstances militating against vacatur, however, relief to the People would be proper. In sum, a court must exercise its discretion at sentencing, notwithstanding that a sentence was negotiated at the time of the plea, and must be free to impose a lesser penalty if warranted. The court, however, should entertain an application by the People to withdraw consent to the plea if a sanction less severe than that negotiated is to be imposed." (N omitted.) What "other circumstances militating against vacatur" might amount to, however, has never been explained, and the effect of *Farrar*, as noted, has been to vitiate a trial court's discretion. Indeed, it has been argued that a " 'sentence bargain' " (52 NY2d, at p 307) binds this court in the same way, i.e., were we to reduce a sentence as "unduly harsh or severe" (CPL 470.20, subd 6), the People would have us remand the case to Supreme Court so that they could be "given the opportunity to withdraw their consent" (pp 307-308). The case at hand is, perhaps, a bad one to use in pointing up *Farrar*'s ill effects on the administration of justice. Although, as a parent myself, I anguish for appellant's situa-

tion, there is no getting around the fact that she shot a man five times — once in the head and four times in the back. She was indicted for second degree murder, but the prosecutor offered to let her plead guilty to manslaughter in the first degree on condition that the sentence be 8⅓ to 25 years. In taking the plea the court stated: "I agree with you * * * that I would prefer to take an open 'B' plea, which would have given me the discretion to impose the sentence that I thought was most appropriate * * * While I don't necessarily agree that the sentence that was required was eight-and-a-third to twenty-five years, and would have preferred an open plea, I cannot say that the sentence agreed upon is an unreasonable one * * * *Farrar* is the law and in this case I can live with it in good conscience and am prepared to carry out the bargain that was struck." At 18, defendant was a clarinet and piano student at the Mannes School of Music. One of her teachers, Louis Gompertz, offered her the opportunity to sell marihuana on consignment, so as to relieve her mother's financial burden. Appellant's father had died when she was 10, and her mother has only a part-time position as a jewelry saleswoman. Within a year appellant was so in debt to Gompertz that she had dropped out of Mannes to repay the money. Allegedly Gompertz threatened her. In any event, on February 1, 1981 at 10 P.M. appellant went to the man's apartment. He lived in Harlem and the woman took a pistol with her, one originally obtained when she carried jewelry for her mother's business. Although she'd gone there to get more marihuana to sell, so she could repay the man faster, the two argued. Appellant shot Gompertz, rifled his apartment and fled. A month later she was arrested and indicted on two counts of murder in the second degree. After the plea allocution the sentencing court received many, many letters attesting to this woman's sensitivity and sterling character. All of the writers agreed that the crime was horrible and punishment must be imposed — but all pleaded for lenity so that there might be some hope of rehabilitation. As one person put it, "the law must be served but surely compassion for Fran will * * * help her restore her self-esteem and dignity so that she might lead a productive life." The Assistant Commissioner of the New York City Department of Correction wrote on appellant's behalf, also. After discussing her behavior over nine months in prison, he wrote: "While, obviously a defendant's deportment during confinement in jail can hardly counterbalance the price one might reasonably expect for the crime to which this defendant has conceded guilt, I do hope that Ms. Gottfried's exceptional performance as an inmate in our system is noted." The offer the People made to appellant was one the court was powerless to do anything about. The defendant either accepted the offer of 8⅓ to 25 years or went to trial where, if convicted she would receive a maximum of 15 years to life. If the court did not agree to impose such sentence on the woman, the offer would be withdrawn. Thus, it seems that in this situation the People are effectively taking over the sentencing power since the court has no input into the sentence — in effect, no discretion. The court either agrees to impose the prosecutor's promised sentence or the defendant is not allowed to take the plea. The net result is that the court has lost its power and discretion "detached from outside pressures often brought to bear on the prosecution and defense" (*People v Farrar*, 52 NY2d, *supra*, at p 306). Clearly, in pronouncing sentence upon this individual the court was precluded from actually considering the investigation and presentence report or any other mitigating circumstances that might have affected its deliberations. Again, it would seem that *Farrar* has resulted in the prosecution having assumed the power of sentencing that traditionally has rested in the court. This, I believe, is not what *Farrar* intended, but it is what has occurred. It may be that *Farrar* needs further evaluation in terms of how it has been interpreted by prosecutors and the lower courts. *People v Farrar* is the law. Were it not, I would vacate the

sentence and remand for resentencing unfettered by the prosecutor's recom-mendation. However, in light of *Farrar* I would have us exercise our discretion under CPL 470.20 (subd 6) and resentence appellant to a 5 to 15 year term.

Asch, J. (dissenting). I agree with Justice Carro's determination that the sentence should be reduced. While youth and a lack of a prior record should not be the sole criteria for mitigating the severity of sentence, especially where we are faced with a most heinous crime as in this situation, certainly they may well be taken into consideration. The reduction is not to condone the act but is made with the hope that after the defendant serves her sentence, which is still substantial, she may still live out the rest of her years as a useful citizen. As heartrending as the tragedy which befell the victim and his family is, it would serve no purpose to mandate that the original sentence be fully served. Justice Carro himself concedes "The case at hand is, perhaps, a bad one to use in pointing up *Farrar*'s ill effects on the administration of justice." I agree. Therefore, it seems to me that perhaps in some other case and before another tribunal the ramifications of that case can be more adequately considered. Nevertheless, I am convinced that *Farrar* does not inhibit or restrict this court from exercising our discretion under CPL 470.20 (subd 6).