OPINION OF THE COURT
Stanley Gartenstein, J.
The application now before the court to withdraw an admission to charges of child neglect heretofore entered raises important policy considerations in addition to legal issues of apparent first impression.
THE facts:
The within proceeding charges the respondents, the mother and stepfather of the subject child, respectively, with beating the child and causing bruises to the child’s ears and temples requiring hospitalization and in being otherwise neglectful by failing to bathe the child or wash his clothes.
In proceedings heretofore had before the undersigned, both respondents, with the concurrence of the Law Guardian and the prosecuting Assistant Corporation Counsel, entered admissions to so-called “unspecified neglect”, a procedural device somewhat analogous to the now obsolete *478 nolo contendere plea formerly applicable to criminal matters, by virtue of which the court assumes consent jurisdiction to order investigation prior to dispositional hearing. Inasmuch as the statutory scheme contemplates a bifurcated hearing procedure, the net effect of this consent is to eliminate the jurisdictional predicate of a preliminary fact-finding hearing. The admissions were accepted after formal allocution on record and predisposition investigation ordered. The enabling statute pursuant to which these admissions were accepted reads as follows: “If facts sufficient to sustain the petition are established * * * or if all parties consent, the court shall * * * enter an order finding that the child is an abused child or a neglected child” (Family Ct Act, § 1051, subd [a]; emphasis added).
Upon being confronted with predispositional reports which in effect recommend residential placement of the subject children away from their parental home, respondents moved to withdraw their admissions, claiming that there existed an understanding between counsel and the Law Guardian that ultimate disposition would not encompass residential placement.
WITHDRAWAL OF ADMISSION IN NEGLECT PROCEEDINGS:
At first blush, it would appear that section 1061 of the Family Court Act dealing with vacatur of prior orders controls this situation. That notion is effectively dispelled by the legislative history of this section which deals with postdisposition proceedings addressed to an otherwise final order and is based upon the sociological reality that in the course of human behavior and interactions, situations may change and thereby render a dispositional order obsolete (Matter of Samantha S., 80 Misc 2d 217; Matter of Ana Maria Q., 52 AD2d 607; Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 1061, 1982-1983 Supp Pamph, p 569).
The only other provision of article 10 of the Family Court Act which may be applicable is section 1042 which contemplates a de novo fact-finding hearing as a predicate for continued jurisdiction, but this statute is limited by its terms to a situation where a natural parent defaulted or was unavailable in prior proceedings.
*479 There exists therefore, by virtue of the inapplicability of both these statutes, a procedural vacuum. In this event, section 164 of the Family Court Act makes the CPLR applicable as an aid in the functioning of this court. Study of the CPLR, however, fails to yield any appropriate provision which would govern this situation.
May the court under these circumstances look elsewhere, specifically, to the Criminal Procedure Law? We hold in the affirmative. Where a compendium of procedural statutes makes provision for a situation analogous to one arising in this court we see no reason not to fill an existing procedural vacuum with such statute especially one which has been extensively construed and which may serve as an excellent guide for the future. In so holding, we are aware of Matter of Norman C. (74 Misc 2d 710); Matter of Hakes (63 Misc 2d 875); Matter of “John Doe” (44 Misc 2d 678); and Matter of Daniel D. (27 NY2d 90), all of which contain general language holding that the Criminal Procedure Law (and its predecessor) is not applicable to the Family Court. These cases all involve juvenile delinquency proceedings and the court’s response to Matter of Gault (387 US 1) which mandates a right-by-right sifting of protections available to an adult toward the end of holding same applicable to delinquency proceedings. The refusal to accept a procedural statutory scheme in toto is consonant with Gault.
Accepting, therefore, the limited applicability of the Criminal Procedure Law, the motion before us is closely analogous to proceedings in courts of criminal jurisdiction to withdraw a plea of guilty. In this connection, the enabling criminal procedure statute provides (CPL 220.60, subd 3): “At any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment * * * to withdraw such plea, and in such event the entire indictment, as it existed at the time of such plea, is restored.”
The appropriateness of this section of the Criminal Procedure Law to proceedings now before us becomes self-evident when the interaction between the Family Court and criminal courts in the area of child neglect and abuse *480 is considered (cf. Family Ct Act, § 1014; Penal Law, § 260.00 et seq.) and when the position of a child protective agency as statutory prosecutor (cf. Family Ct Act, § 1032) is compared with that of a District Attorney (cf. People u Van Sickle, 13 NY2d 61).
Applying the Criminal Procedure Law therefore, it appears generally that the grounds supporting a motion to withdraw a plea entered in a criminal court may be categorized as follows:
(1) plea allegedly coerced or otherwise involuntarily extracted (Matter of Lyons v Goldstein, 290 NY 19; People v Laskaris, 28 AD2d 586);
(2) defendant allegedly innocent (People v Vignera, 29 AD2d 657; People v Klein, 26 AD2d 559);
(3) mistake in entering original plea (People v Chichester, 262 App Div 567);
(4) prosecution unable to demonstrate prejudice (People v Forlano, 19 AD2d 365);
(5) defendant’s misstatement of facts misled prosecution into acceptance of plea (People ex rel. Bocchetti v Wallack, 269 App Div 888); and
(6) plea bargain dishonored or presentence report contraindicates reasonableness of plea bargain (People v Selikoff, 35 NY2d 227; People v White, 57 AD2d 937).
These categories appear to be specific areas in which the court has applied the general discretion vested in it by statute. What clearly emerges is the fact that whereas early cases were concerned with enforcement of a plea bargain on a quasi-specific performance basis, the right of a court to actively participate in the sentencing procedure toward the end of not having its function relegated to rubber stamping a plea bargain it cannot honor in good conscience has been recognized. This principle has formed the basis of applications to withdraw pleas both by the defense (cf. People v Selikoff, supra) and more recently, by the prosecution (People v Farrar, 52 NY2d 302). In the long run, appellate courts stress that it is the court itself which must be satisfied with a plea bargain and that if and when circumstances arise whereby the court for any reason feels *481 it cannot honor a plea bargain, it is bound to vacate the plea rather than surrender its sentencing prerogatives (People v Selikoff, supra).
We find ourselves within the parameters of this principle. The key factor is the court’s obligation to exercise its own discretion. Assuming, arguendo, that all requisites of a plea bargain exist by virtue of bona fide arm’s length negotiations, if the court feels that it cannot in good conscience give effect thereto, it is bound to call a halt to its performance and offer a party the return of his or her previously entered plea.
We turn now-to the application of these principles in the matter before us.
policy considerations:
The very enactment of the so-called “consent-jurisdiction” statute (Family Ct Act, § 1051, subd [a]) must be held to constitute legislative approval of plea bargaining in neglect and abuse cases. It is difficult if not impossible to visualize any consent to jurisdiction of this nature which could result in a parent’s loss of children without a supporting negotiated quid pro quo. On the other hand, there exists an overriding concern by this court that the welfare and protection of its wards not be negotiated away.
Bearing in mind the foregoing as a general frame of reference, the far more important policy consideration which now confronts us is the court’s absolute obligation to probe the existence or lack of it of the underlying facts before it issues its final dispositional order. While this may seem sublimely basic to a dispositional order in any court, it is of overriding importance in child neglect and abuse matters where the slightest nuance brought to light by the fact-finding hearing may give the court some clue as to how to negotiate its way through the darkness which confronts it by virtue of the fact that the acts giving it jurisdiction take place in secret and are most often perpetrated upon those too young and too inarticulate to recount them. Experience has shown that a full investigation is itself too often inadequate to measure up to its function of providing insight to the court as to the thrust of its ultimate decision. It has been our experience and that of many *482 of our colleagues that an exhaustive fact-finding hearing provides more insight into the secret workings of the litigants’ minds than the most probing posttrial investigation may yield. To illustrate: Different rates of calcification may highlight the fact that multiple fractures occurred at widely separated intervals; the shape and situs of scars or burn marks may give insight into implements used to inflict them; the location of scar tissue or healed fractures may negate an explanation which an interviewing psychiatrist might otherwise accept. The possibilities are infinite. In the long run it must be realized that the fact-finding hearing is not merely a procedural predicate to be hurdled before the court assumes jurisdiction to investigate, but is also a valuable source of information for it to assimilate into its predispositional investigation. For this reason we respectfully believe that wherever possible, for the court’s own benefit as well as for that of the litigants, an exhaustive fact-finding hearing should be conducted. We hold this belief even in the face of an admission on record which eliminates its legal necessity.
We are therefore inclined to grant these motions essentially for our own edification. We reject the notion that this may inure to the benefit of the undeserving. A search for truth is not a sporting match in which points are scored. Likewise, we reject the notion that respondents may have been misled by a plea bargain which was dishonored. The negotiations between highly experienced counsel to which the court was privy were involved, specific, at arm’s length and scrupulously conducted.
We do grant these motions for reasons of policy upon being confronted with one of these frustrating exceptions which prove every rule whereby the predispositional investigation whose results are now before us do not give sufficient insight to enable the court to render an informed dispositional order. In the light of this reality, had counsel not moved for a rollback of proceedings, the court would have done so sua sponte.
The motions to vacate the admissions heretofore entered are accordingly granted. The clerk shall calendar this *483 matter for trial de novo. The remand of the children is continued in the interim.