■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILFREDO SAEZ, Appellant.—Judgment of the Supreme Court, Bronx County (Covington, J.), rendered July 13, 1984, convicting defendant of robbery in the first degree and sentencing him to a term of imprisonment of 12½ to 25 years, modified, on the law and facts, to reverse as to the sentence imposed, vacate such sentence and remand for resentencing in compliance with CPL 390.20 (1), and otherwise affirmed.

CPL 390.20 (1) provides: "Requirement for felonies. In any case where a person is convicted of a felony, the court must

order a pre-sentence investigation of the defendant and it may not pronounce sentence until it has received a written report of such investigation." Here, the Probation Department merely submitted a presentence report 3½ years old, brought up to date solely by the addition of a cover sheet and face sheet. No additional information was contained in these additions concerning defendant's background, activities in prison or his life-style, accomplishments or employment history in the period of time since his release from prison. Defense counsel objected to the inadequacy of this report.

Incarceration in prison should have some effect on the character of the jailed person, either for good or bad. For this reason, a new probation report is useful. While defendant was incarcerated for most of the period between the preparation of the 1980 presentence report and the instant judgment of conviction, CPL 390.20 (1) mandates, and the public policy of our State requires, a current presentence report before sentence is imposed. *(People v Selikoff,* 35 NY2d 227, 238.) Concur —Sullivan, J. P., Asch and Kassal, JJ.

Fein and Ellerin, JJ., dissent in part in a memorandum by Fein, J., as follows: Defendant appeals from a judgment of the Supreme Court, Bronx County (George Covington, J., at trial with a jury), rendered July 13, 1984, convicting him of robbery in the first degree and sentencing him to an indeterminate term of imprisonment of 12½ to 25 years.

There should be a reversal and a new trial.

Luciano Serravento (Serravento) testified that he was robbed in his pizzeria located at 1588 University Avenue, Bronx, at about 1:30 A.M. on November 6, 1983. Serravento identified defendant at a lineup on December 13, 1983. However, he refused to identify the defendant in court at the trial. Michael Lee (Lee), Serravento's 15-year-old employee, identified defendant at a lineup and also at the trial. Although Serravento had told the Grand Jury that he had seen defendant "take the gun out of the box and took out a short shotgun" and was able to see "the barrel", he told the trial jury that he did not know what the object wrapped in paper was: "I don't know. A revolver, a shotgun. Something like that." The witness held his hands up to indicate its length, which was stipulated to be approximately eight inches. He also told the trial jury that he did not see the barrel of a gun.

Lee testified that defendant "pulled out a sawed-off shotgun" but conceded that he only saw the barrel which was 18 to 20 inches long. He recalled, "There was a bag over it."

Both testified that Serravento was relieved of his wallet, which contained $600 or $700 and personal papers. Lee also testified that defendant had purchased pizza in the store several times before the robbery. Serravento stated only that the robber "seemed like" a patron. He testified that defendant was taller and thinner than the robber. When asked to identify defendant in court, Serravento replied "I told him that I don't want to charge him." The court reminded Serravento that he was "sworn to tell the truth", whereupon Serravento pointed to defendant and stated, "He looks like him." He then equivocated with respect to his lineup identification of defendant: "I believe so. I am not sure."

Defendant urges on appeal that the court erred when it permitted the prosecution to impeach Serravento with his Grand Jury testimony regarding the object that appeared to be a shotgun. Defendant contends that Serravento's trial testimony did not "affirmatively damage" the People's case (*People v Fitzpatrick,* 40 NY2d 44, 51; *see,* CPL 60.35). Although defendant concedes that Serravento's trial testimony was materially different from his Grand Jury testimony, it is urged that the trial testimony did not "tend to disprove" the People's claim set forth in the indictment that "defendant displayed what appeared to be a sawed off shotgun."

In my view, the People should not have been permitted to cross-examine Serravento, notwithstanding the witness' recalcitrance. Despite the differences between Serravento's Grand Jury and trial testimony, his trial testimony did not "tend to disprove the People's case". The totality of Serravento's testimony on this topic established that something was displayed which could have been perceived as a firearm for the purpose of compelling Serravento to give up his property and he was threatened under the circumstances. Since this testimony was sufficient to establish the charged crime, robbery in the first degree, the prosecutor could not complain that Serravento's testimony tended to disprove his case.

This error, standing alone, would not be sufficient to warrant a reversal since it was plain that these discrepancies between Serravento's Grand Jury and trial jury testimony tended to "favor" defendant.

Premised upon Serravento's failure to identify defendant at the trial, there was much testimony concerning the circumstances of the lineup identification and the discrepancies in the description of defendant. The court's charge carefully emphasized the significance of this testimony and the duty of

the jury to examine it carefully. Since it was conceded that a robbery had occurred, the only question was identity. This was crucial. However, on this very issue, the summation of the prosecutor was entirely improper and prejudicial. Coupled with the failure of the court properly to instruct the jury in this respect, defendant was denied a fair trial.

One of the policemen involved in obtaining information from the victims was Officer Ramer. However, he was not called as a witness during the trial. Commenting on this failure of the People to call Ramer as a witness, defense counsel, in his summation, made the following remarks: "Did Ronda add anything to the People's case? No. Nothing whatsoever. He did attempt to claim there were earlier conversations. He said, 'Well, maybe I got some information from Ramer about a different conversation with Michael Lee.' Well, ladies and gentlemen of the jury, Ronda himself told you that Ramer was available to testify before you. Do you think for one minute if Ramer's testimony wouldn't have given an explanation of that interview of eyewitness notation that Ramer wouldn't have been brought before you by the People? I submit to you that the reason he wasn't brought before you is that his testimony would not have supported the identification that it was anyone but Police Officer Stephen who took account from Michael Lee of what happened on November the 6th, an account which included the description of the height of the actual perpetrator of this robbery."

There was no objection by the prosecution. However, in his summation, the Assistant District Attorney responded:

"I submit to you, ladies and gentlemen of the jury, that nobody owns a witness. Nobody own a witness. No party owns him.

"I submit to you, ladies and gentlemen of the jury, that Police Officer Ramer was available to defense counsel; that defense counsel has the same subpoena power signed by the Court—[an objection at this point was overruled]—that any other lawyer has and that if Mr. Pozmanter thought there was evidence that would help his case, he would have called Detective Ramer to the stand to testify. [Another objection by defense counsel was overruled.] Instead he waits until the trial is over and argues to you that Detective Ramer, 'Oh, he had something. He had some information or didn't have some information and that is why the ADA didn't call him.' Well, why didn't defense counsel?"

At this point defense counsel objected, stating, "defense counsel has no burden of proof." The court then responded:

"I am now asking and I will so instruct this jury that defendant has no burden of proof of proving anything.

"I also note that you are injecting the concept of the burden of proof adjacent to your objection when you know full well, as a trained attorney, you are to only make objections and not make legal argument in front of the jury.

"I will charge the jury with respect to the burden of proof in this case and I would suggest that, in the future, just make the objections and the Court will rule.

"You may proceed."

The prosecutor continued:

"Thank you, your Honor.

"Now, ladies and gentlemen of the jury, I'm going to ask you, once again, to look through and look at the real facts and the real evidence and the real testimony and look for the truth.

"First of all, you heard two people come here and tell you that Mr. Serravento used this method to indicate the height of the man that robbed him; that one officer drew a conclusion of 5-5, another officer drew a conclusion of 5-6 or 5-7. Okay. I then ask you this, to think back. Police Officer Ronda's testimony is that on 11/7, two days after the robbery, he had the 61, the typed height on it and that he discussed with Mr. Serravento the height of 5-2. Mr. Serravento's reaction was, 'No. This' (Indicating), and the officer wrote down 5-6 or 5-7."

Defendant's counsel properly argued that the absence of Officer Ramer indicated that his testimony would not strengthen the prosecutor's case. This did not open the door to the prosecutor's contention that counsel could have resolved any question by calling Ramer as a defense witness. Since a defendant has no duty to call any witness, he may not be charged with failure to do so. As stated in *People v Brown* (34 NY2d 658, 660), in connection with the prosecutor's failure to call a police officer who was the companion of the principal witness, "Although in a literal sense such a witness could be said to be available to both parties, he would be expected to be favorable to the prosecution and hostile to the defense."

Since the issue in this case was identification and there were discrepancies in the police reports and the reports that were based upon interviews with the witnesses, the defense summation was appropriate. The court's instructions to the jury did not alleviate the prejudice, particularly in the light of the court's criticism of defense counsel for raising the issue in

his objection to the prosecution's suggestion that the burden was on defendant to call the police officer.

Central to our trial system is the fact that a defendant is not required to offer any evidence in his defense and may nonetheless be critical of the prosecution's failure to do so. When the defense presents no evidence, it is entirely improper for the prosecution to comment thereupon *(People v La Susa,* 87 AD2d 578; *People v Wright,* 41 NY2d 172). As those and other cases point out, the prohibition on prosecution comment is not diminished where the defense summation comments on the failure of the prosecution to call a witness. Where a witness who would be expected to be available to the prosecution and whose testimony would not be cumulative or trivial is not called by the People, the defense has the right to comment thereon. At least three objections were made by defense counsel to the prosecutor's remarks in this regard. All were, in effect, overruled. The issue was plainly preserved despite the court's comments, "I will so instruct this jury that defendant has no burden of proof of proving anything".

It is plain that Ramer interviewed Lee and Serravento. The source of the discrepancies between the police reports might have been clarified had Ramer been called. His testimony would not have been cumulative or trivial *(People v Wright, supra; People v Brown, supra).*

This went to the very heart of the defense which relied upon Serravento's failure to identify the defendant upon the trial. This was particularly prejudicial because of the relentless effort of the People to impeach Serravento because of the discrepancies between his Grand Jury testimony and his petit jury testimony respecting identification of the defendant. The issue was critical.

I concur with the majority that the sentence was unlawfully imposed (CPL 390.20 [1]). It is undisputed that the court in imposing sentence did not have a thorough, up-to-date probation report. The report consisted of an earlier presentencing report, prepared in connection with a 2⅓- to 7-year sentence imposed on January 9, 1981 and "a cover sheet and face sheet". It contained "no information as to what [defendant] had been doing since his release from prison." Defense counsel pointed out the deficiencies in the report although he did not request an adjournment of the sentencing. It may be that there was nothing to investigate because defendant had been in jail for at least a portion of the intervening 3½ years. However, the statute is plain. A court may not impose a

sentence after a felony conviction without a thorough report (CPL 390.20 [1]; *People v Andujar*, 110 AD2d 606; *People v Selikoff*, 35 NY2d 227, 238, *cert denied* 419 US 1122).