OPINION OF THE COURT
Edward C. Alfano, J.
The defendant has been indicted for the crime of burglary in the third degree and now moves to dismiss the indictment on the alternative grounds that the Grand Jury proceeding was defective, and/or there exists some legal impediment to convict the defendant for the offense charged, and/or dismissal is required in the interests of justice.
The defendant contends that:
(1) When the instant matter was before the Criminal Court, Kings County, under docket No. 2K008296/82, a plea offer of a class A misdemeanor with a recommendation of a nine-month sentence was made by an Assistant District Attorney to defendant through defendant’s counsel.
*149 (2) The said offer was accepted by the defendant, and the defendant promptly and unequivocally communicated his acceptance to defense counsel.
(3) Subsequently the District Attorney’s office refused to recognize the plea offer and proceeded with a Grand Jury presentment which resulted in the instant indictment.
(4) Defendant would be entitled to specific performance except for his status as a predicate felon. Therefore defendant urges that the indictment be dismissed, or in the alternative, that the District Attorney be directed to file a superseding information charging the defendant with misdemeanors only to which he would plead guilty.
The People respond, in substance, that:
(1) They have no record of any plea offer having been made and no formal record of such an offer exists.
(2) Assuming such an offer was made, the People reserve the right to withdraw such an offer.
(3) New York case law prohibits the enforcement of an off-the-record offer.
(4) Federal case law, particularly Government of Virgin Islands v Scotland (614 F2d 360), precludes defendant from the remedy of specific performance because defendant still has the adequate remedy of a trial by jury.
(5) Even assuming that defendant was entitled to specific performance and that the alleged plea offer was actually made, the enforcement of such a plea would be contrary to CPL 220.10 (subd 5, par [c]) in that a predicate felon is not permitted to plead to a misdemeanor in satisfaction of an indictment if he has been indicted for a felony.
A hearing on defense motion to dismiss the indictment was held before this court on July 11, 1983. The defendant testified and called as witnesses Legal Aid attorneys Robert Newman, Mark Whelan and Robert Krause.
The People called as their witness Assistant District Attorney Paul J. Israelson. The court called as its own witness Assistant District Attorney William Robinson.
Upon the credible evidence the court makes the following findings of fact:
*150 FINDINGS OF FACT
The defendant was arraigned on March 4,1982 in Kings County Criminal Court, Part AR 3, on a felony complaint charging defendant with having committed the offense of burglary in the third degree. The defendant was represented by Myda Alsace, now deceased, of the Legal Aid Society.
At the time of arraignment, a plea offer of an A misdemeanor with a recommendation of a nine-month sentence was made by the Assistant District Attorney to Ms. Alsace, who agreed to convey this offer to the defendant.
Although the said offer was not placed on the official record, it was duly noted by Ms. Alsace in the “remarks” column of the Legal Aid file. The case was adjourned by Judge Felig to March 8, 1982, Part AP 4, Kings County Criminal Court.
In the interim, Ms. Alsace discussed the People’s offer with the defendant, who advised her that he accepted the offer of an A misdemeanor and a recommended sentence of nine months. On March 8,1982, the Department of Correction failed to produce the defendant before Judge Miller, who was presiding on that date in Part AP 4. Mark Whelan, of the Legal Aid Society, representing the defendant, requested a second call as there was a possibility of a disposition.
On second call Ms. Alsace appeared for the defendant and informed the court that there could be no disposition at that time as the defendant had not been produced by the Department of Correction. Judge Miller thereupon adjourned the case until March 9, in Part AP 4.
On March 9, 1982 the defendant was produced before Judge Felig, who was presiding in Part AP 4. Mr. Krause of the Legal Aid Society appeared for the defendant and Assistant District Attorney Susan Bodner appeared for the People. The court was informed that Ms. Alsace was at that moment having discussions with Supervising Assistant District Attorney William Robinson with respect to a disposition of this case.
Assistant District Attorney Bodner informed the court that the defendant was being considered for participation *151 in the felony waiver program. The defendant at that time waived his rights pursuant to CPL 180.80. Judge Felig thereupon adjourned the case until March 10,1982, in Part AP 4, for possible disposition.
On March 10, 1982, the defendant was produced in Part AP 4, again before Judge Felig. The defendant was informed that the People did not recognize their prior plea offer and that the case had in fact been previously presented to a Grand Jury and an indictment was to be voted and filed.
The defendant, William World, on March 4,1982 in Part AR 3, Criminal Court, Kings County, was served by an Assistant District Attorney with adequate and timely notice of defendant’s right to appear and testify before the Grand Jury. Service of said notice is indicated on the District Attorney’s chronology sheet, and additionally, Judge Felig made a notation on the Criminal Court “yellow back” indicating defendant had been served with said notice.
PLEA BARGAIN ENFORCEMENT-INTRODUCTION
In considering the relief requested by the defendant and the People’s responses, the court, after extensive study of the issues raised by the parties, concludes that this case is one of first impression.
To reach a proper determination in this matter, it is necessary to consider the recent history of plea bargaining with emphasis on its enforceability.
Subsequent to 1970, when the United States Supreme Court upheld the validity of the plea bargaining process (Brady v United States, 397 US 742), the Federal and State courts have had to negotiate the constitutional thicket of broken plea promises and permissible remedies.
The United States Supreme Court initially dealt with this problem in Santobello v New York (404 US 257). In that case, an agreement for a lower sentence was repudiated by a subsequent Assistant District Attorney assigned to the case and the agreement was not implemented by the State court.
Three novel questions were presented by Santobello (supra). First, does a defendant have a constitutional right to *152 relief when a plea promise is broken? Secondly, if there is such a right, what is its source in the Constitution? Thirdly, what remedy is required? (See discussion, 66 Cal L Rev 471.)
Chief Justice Burger, writing for the majority in Santobello v New York {supra, pp 260-261), stated: “‘[P]lea bargaining,’ is an essential component of the administration of justice. Properly administered, it is to be encouraged * * * However, all of these considerations presuppose fairness in securing agreement between an accused and a prosecutor.”
As to the right to enforcement, the Supreme Court indicated that the process “must be attended by safeguards to insure the defendant what is reasonably due in the circumstances” (Santobello v New York, supra, p 262).
Similar to the case at bar, a subsequent Assistant District Attorney in Santobello (supra) was unaware of a plea offer made by a previously assigned prosecutor.
In view of this court’s findings of fact that a plea offer was made to the defendant herein and accepted by him, the court considers applicable Chief Justice Burger’s ruling that “staff lawyers in a prosecutor’s office have the burden of ‘letting the left hand know what the right hand is doing’ or has done. That the breach of agreement was inadvertent does not lessen its impact” (Santobello v New York, supra, p 262).
In Santobello (supra), the Supreme Court was unanimous in holding that the defendant was entitled to some remedy. As to the source of the right to a remedy, Chief Justice Burger alluded to the doctrine of interests of justice. He left the choice of remedy to the discretion of the State courts, suggesting that either specific performance or the vacating of the plea might be required (66 Cal L Rev, op cit.).
The question of remedy was not clearly decided in Santobello (supra), thereby requiring an analysis of its progeny in the Federal and State courts. Although most of the cases examined by this court in its research involve broken promises with respect to agreed sentences, the facts therein were not exactly on all fours with the facts of this *153 case. However, a general framework of law and constitutional interpretation may be extrapolated from them.
The United States Court of Appeals for the Second Circuit released a defendant prior to the expiration of his sentence, holding: “[Fundamental fairness and public confidence in government officials require that prosecutors be held to ‘meticulous standards of both promise and performance’ [of plea bargains]” (Palermo v Warden, 545 F2d 286, 296).
Although the defendant in the instant case had not, as in the Palermo decision (supra), acted to his own detriment, this court believes that the constitutional mandate of Santobello (supra) and the fairness requirements of Palermo attach once a plea offer has been made and accepted. The court agrees that the “obligation [of keeping promises absent unusual circumstances] applies with special force to representatives of the state who enter into plea agreements with individual defendants * * * that the due process clause provides general protection against the substantive unfairness of uncertainty regarding plea agreements” (66 Cal L Rev, pp 524-527).
POST-SANTOBELLO — CONTRACT OR CONSTITUTIONAL RIGHTS
The principal case relied upon by the defendant, and which has sparked much comment and controversy in the field of plea bargaining, is Cooper v United States (594 F2d 12). In that case an Assistant United States Attorney withdrew a plea proposal several hours after it was made by him and accepted by the defense counsel and before the defense counsel had an opportunity to communicate defendant’s acceptance. The Fourth Circuit held that although contract principles may be applied to the body of plea bargain law, Santobello (supra) makes it plain that the core concept to be applied is the existence of a constitutional right of the defendant to be treated with fairness (Cooper v United States, supra, p 16). The court in Cooper recognized that the case was distinguished from those in which a defendant had relied on a plea promise to his detriment.
Although the facts in Cooper (supra) are not identical with the facts in the case at bar, neither Cooper nor the *154 defendant herein, William World, had actually entered pleas nor had either defendant acted to his detriment in reliance upon a plea offer.
Judge Phillips, writing for a unanimous Fourth Circuit Court, held that even if a specific contract right could not be claimed, nevertheless “right and violation of right was shown, and * * * relief must be given * * * [W]e find the constitutional right to ‘fairness’ to be wider in scope than that defined by the law in contract * * * [A]nalogies from contract law will usually provide a reliable inclusive test for the existence of constitutional right * * * but not an equally reliable exclusive test” (Cooper v United States, supra, pp 16-17).
As in the case at bar and virtually all criminal cases, the prosecuting attorney’s plea offer is communicated to the defendant through his counsel thereby involving the defense counsel’s integrity in the process.
In the case at bar, the People contend that even if the court found that an offer had been made by the People and had been accepted by defendant in conversations with his attorney, that acceptance was never communicated to the District Attorney. This court rejects the argument and prefers the logic of the Fourth Circuit when it held (supra, p 17, n 6): “[T]he constitutional right involved here is not dependent upon the fortuitous timing of acceptances and withdrawals, nor upon antecedent performance by a defendant”. “[Constitutional decisions cannot be made to turn in favor of the government on the fortuities of communications * * * [A] constitutional right to enforcement of plea proposals may arise before any technical ‘contract’ has been formed” {Cooper v United States, supra, pp 17-18). The two predicates forming the constitutional rationale of the Cooper case are the right to fundamental fairness embraced within substantive due process guarantees and the Sixth Amendment right to effective assistance of counsel {Cooper v United States, supra).
The Cooper court outlined certain criteria for the granting of relief, namely: (a) that a proposal be specific and unambiguous in form; (b) that it be made without being conditioned on the approval of supervisors; (c) that the proposal be reasonable in context; (d) that it be made by a *155 prosecutor with apparent authority; (e) that the proposal was communicated promptly to the defendant; and (f) that defendant accepted promptly and unequivocally.
After a thorough review of all the evidence and in light of the court’s findings of fact, this court concludes that the Cooper criteria apply to and have been satisfied by the facts of the case at bar. The court notes, that although the People have no record of a plea offer being made on March 4, 1982, the People’s witnesses conceded that such an offer would have been within the authority of the Assistant District Attorney assigned on that date.
Shortly after the Cooper decision (supra), the Fourth Circuit had an opportunity to clarify its position. In the case of United States v McIntosh (612 F2d 835), that court stated that fundamental contract and agency principles must be applied to plea bargaining as the best means to fair enforcement of the parties’ agreed obligations, but that technical rules of offer and acceptance should not defeat a defendant’s personal acceptance under the facts presented.
In juxtaposition to the Cooper doctrine, the People rely upon the case of Government of Virgin Islands v Scotland (supra). In that case, the United States Third Circuit Court of Appeals declined to follow the Cooper rationale and held (p 364) that “binding the prosecutor to his original plea does interfere with his discretionary functions”.
That court also held that the granting of specific performance was unnecessary as the defendant was still entitled to his right to a trial by jury.
The Third Circuit further stated: “This fundamental right [to trial by jury] would be belittled if we held it to be an insufficient ‘remedy’ or result for a defendant who had not been induced to rely on the plea to his detriment * * * Thus we reject a Cooper-type rule that would allow specific performance of an unconsummated plea in the absence of such detrimental reliance because a jury trial on the charge is an adequate remedy” (Government of Virgin Islands v Scotland, supra, p 365).
Various circuit and district courts have had occasion to express their views on this topic. The Eastern District Court of New York has stated that “[i]t would be inappro *156 priate for the criminal law to totally embrace principles of contract law * * * We believe that contract principles need be adopted insofar as their utilization will ‘insure the defendant what is reasonably due in the circumstances’ ” (United States v Lieber, 473 F Supp 884, 891).
The Eighth Circuit, in a recent case, has decided: “We believe that the Cooper analysis should be followed * * * Imposing upon the government the duty to conduct plea bargaining with scrupulous fairness which, in the present case, would require the government to honor the terms of its plea proposal, is consistent with the ‘fairness’ requirement set forth in Santobello” (Johnson v Mabry, 707 F2d 323, 329).
The Ninth Circuit Court of Appeals took the view: “Although plea bargaining is a matter of criminal jurisprudence, a plea bargain itself is contractual in nature and ‘subject to contract-law standards.’ ” (United States v Krasn, 614 F2d 1229, 1233.)
In view of this court’s findings of fact as outlined above, specifically that a plea offer was made on March 4,1982 to the defendant by an Assistant District Attorney and promptly accepted unequivocally by defendant in discussions with his counsel, this court is of the opinion that even a contract analysis will uphold the agreement. The only contract criterion upon which the evidence was indirect was the actual communication of the acceptance of the offer to the District Attorney’s office by the defense counsel.
However, as neither the New York State Court of Appeals nor any Appellate Division has decided the issues presented by the Cooper/Virgin Islands dichotomy, this court adheres to the Cooper analysis and rationale. Public policy requirements as well as due process and the Sixth Amendment right to effective assistance of counsel impel this court to reach this result. This court believes, as did the Fourth Circuit: “There is more at stake than just the liberty of this defendant. At stake is the honor of the government public confidence in the fair administration of justice, and the efficient administration of justice” (United States v Carter, 454 F2d 426, 428).
*157 NEW YORK’S SELIKOFF DOCTRINE
In opposition to defendant’s motion, the People have urged an additional argument to the effect that even assuming that the court finds as a matter of law that the defendant is entitled to specific performance pursuant to the Cooper doctrine, the defendant’s motion would have to be denied since the alleged plea offer was not formally placed upon the court record. Chief Judge Breitel, speaking for the Court of Appeals, held: “[M]any difficulties attending the plea negotiation process may be eliminated by placing the entire agreement on the record and insuring that all parties realize that, in all but the most unusual circumstances, no other purported agreement will be recognized. This would make for a sound general practice but it is not suggested that an absolute rule is desirable. Absolutes, however well intentioned, have a perverse way of turning into plagues” (People v Selikoff, 35 NY2d 227, 244-245; emphasis supplied; see, also, People v Frederick, 45 NY2d 520; Matter of Benjamin S., 55 NY2d 116).
The United States Second Circuit has upheld the constitutionality of the Selikoff rule (see Siegel v State of New York, 691 F2d 620).
The court notes from the evidence that the plea offer was made in an arraignment part of the Criminal Court. The court is aware that due to the crushing load of cases borne by the Legal Aid attorneys and Assistant District Attorneys, the ideal of the Selikoff doctrine may not be met in all cases. The court took special note of defendant’s exhibit No. 1, the Legal Aid file folder in which Ms. Alsace made the following entry under the date March 4, 1982: “Offer A + 9 mos. or grand jury — Robinson Supervisor.” The court also notes that the transcripts of the defendant’s subsequent appearances in Criminal Court indicate that Ms. Alsace was in communication with Mr. Robinson concerning a disposition based on defendant’s acceptance of the offer. This court is of the opinion that under the facts of this case the Selikoff “on-the-record” concept should have a broader meaning than that of merely the official court transcript. The court is convinced that under the totality of the circumstances of this case the Selikoff rule should not be applied absolutely, and that this case should be treated as *158 one of the “unusual circumstances” referred to by Chief Judge Breitel. The court also notes that the original defense attorney, Myda Alsace, was deceased at the time the hearing on this motion was conducted and therefore defendant was deprived of her testimony. The court believes that defendant should not be prejudiced by her death.
DEFENDANT’S PREDICATE FELONY STATUS — CPL 220.10 (SUBD 5, PAR [c])
As a concluding argument, the District Attorney contends that, assuming the court finds as a matter of law that the defendant is entitled to specific performance, such relief may not be granted since it would be in contravention of CPL 220.10 (subd 5, par [c]) which states, in pertinent part: “Where the indictment charges a felony, other than a class A felony or class B felony * * * and it appears that the defendant has previously been subjected to a predicate felony conviction * * * then any plea of guilty * * * must include at least a plea of guilty of a felony.”
A hearing with respect to defendant’s application to controvert his predicate felony status was held on September 23, 1983. Neither the defendant nor the People presented any witnesses. Both sides relied upon the plea minutes of defendant’s prior felony convictions which minutes were introduced into evidence.
Upon the credible evidence the court makes the following findings of fact: That on May 25, 1977, the defendant pleaded guilty to the crime of criminal sale of a controlled substance in the third degree under indictment No. 1382/77. The plea was taken by Justice Vetrano who advised the defendant of the various alternatives available to him and that by pleading guilty he was waiving his right to a trial by jury as well as the right to cross-examine witnesses.
On May 27, 1977, defendant appeared before Justice Marano of the Supreme Court, Kings County, and pleaded guilty to criminal possession of stolen property in the second degree to cover indictments Nos. 3915/76 and 3917/76. Justice Marano informed the defendant that by pleading guilty he was waiving his right to a trial by jury.
*159 The defendant also appeared on May 27, 1977 before Judge Divernieri and pleaded guilty to the charge of criminal possession of stolen property in the second degree in satisfaction of indictment No. 1389/76.
The court in that instance had advised the defendant that by pleading guilty he was giving up his right to a trial by jury.
Subsequent to the landmark decision by the United States Supreme Court in Boykin v Alabama (395 US 238), the Appellate Division, Second Department, has held that a failure to inform a defendant of his Boykin rights or failure to show that by pleading guilty defendant knew that he would be waiving such rights (the right to trial by jury, to confront witnesses, to remain silent), renders the plea ineffectual as a predicate felony (People v Pruitt, 83 AD2d 872).
With respect to the pleas taken by defendant on May 27, 1977, the court concludes that those pleas were constitutionally defective in that two out of three Boykin rights were omitted.
However, the plea taken by Justice Vetrano presents another issue. On that occasion defendant was informed of all his Boykin rights, except the right to remain silent.
The United States Court of Appeals for the Second Circuit has held that “[a] guilty plea will not be invalidated because of the district court’s failure * * * to enumerate one or more of the rights waived by the defendant” (Kloner v United States, 535 F2d 730, 733, cert den 429 US 942). That court further held that a plea of guilty will be upheld so long as the defendant is adequately informed of the alternative courses of action open to him and so long as the defendant has not, because of either ignorance or misinformation, been misled into entering the plea.
This court has concluded that the facts with respect to the plea in question are on point with a decision previously rendered by this court in People v Davis (114 Misc 2d 791, 795), and therefore adopts the following conclusions of Davis as applicable to this case:
“A reading of the plea minutes in the case at bar leads to the conclusion that the defendant was sufficiently aware of *160 the consequences and alternatives to this guilty plea to render his plea a voluntary and intelligent one.
“The defendant does not claim that he did not have effective assistance of counsel or that he would have exercised his right to remain silent. Defendant does not assert that he was coerced or deceived into pleading guilty. His only point is that he was never told by the Judge presiding at the time he pleaded guilty, that he had the right to remain silent. Defendant does not contend that he never knew of this right nor does he argue that if he had been told of this right he would not have pleaded guilty; nor does he profess innocence. He merely makes the hollow statement that since at the allocution he was not told of this right, the plea is constitutionally defective.
“The right to remain silent may have inured to the defendant’s benefit had he elected to go to trial. A defendant’s right to silence during a trial is consistent with keeping the burden on the prosecution to prove his guilt beyond a reasonable doubt. However, a defendant’s right to silence is inconsistent with his desire to plead guilty. If this defendant was to realize his desire to plead guilty he had to proclaim his guilt. A proclamation of guilt and silence are mutually exclusive.
“Defendant initiated the request to change his plea. Defendant knowingly and intelligently threw on to the plea bargaining table his right to remain silent. This he did freely and voluntarily in order to secure a lesser sentence.
“By declaring his guilt defendant effectively and knowingly surrendered his right to silence and to freedom from self incrimination.”
The court therefore determines that the plea of guilty taken by Justice Vetrano on May 26, 1977, was constitutionally valid and the court determines further that the defendant is to be considered a second felony offender.
Several cases have been brought to the court’s attention by way of amplification of CPL 220.10 (subd 5, par [c]). In the matter of People v Michener (86 Misc 2d 166, 168), the Putnam County Court denied the People’s motion on other grounds, but stated: “CPL 220.10 (subd 6, par [b]) man *161 dates a plea to at least a felony where a prior felony conviction had been obtained * * * and leaves no discretion in the matter to the Trial Judge * * * any plea to a lesser crime would be in violation of law and a nullity.”
The Court of Appeals has affirmed the principle that a plea in violation of CPL 220.10 would be a nullity (People v Bartley, 47 NY2d 965).
An additional case related to the subject is People v Phillips (48 NY2d 1011) in which the Court of Appeals held invalid a plea in Criminal Court which was taken subsequent to an indictment being filed in Supreme Court.
This court believes that the Phillips case (supra) is distinguished from the case at bar in that in the instant case the court has found that the plea offer and acceptance occurred prior to the indictment being filed and that defendant should not be penalized as a result of the Department of Correction’s confusion in failing to produce the defendant as directed and prosecutorial negligence in failing to record in some manner the initial plea offer. However, the court, for the purposes of this decision and in light of its determination that defendant is a predicate felon, agrees with the District Attorney that CPL 220.10 (subd 5, par [c]) is applicable and in consequence thereof the defendant may not be granted specific performance. However, the court does not agree that no remedy is available to the defendant. The court, in the interests of justice and to implement the fairness requirement of Santobello (supra) will fashion a remedy.
There are some circumstances in which relief will be given despite the illegality of the agreement (66 Cal L Rev, p 531). One authority has stated: “Before granting or refusing a remedy, the courts have always considered the degree by the offense, the extent of public harm that may be involved, and the moral quality of the conduct of the parties” (6A Corbin, Contracts, § 1534, p 816).
This court also agrees that between the prosecutor and the defendant the prosecutor may well be the more culpable in making an illegal agreement; if anyone is charged with the knowledge of the law it is the prosecutor (Correale v United States, 479 F2d 944).
*162 CONCLUSIONS OF LAW
After careful and extensive consideration of the arguments and cases submitted by counsel and its own research, the court summarizes its conclusions of law as follows:
(1) The plea offer made by the People and accepted by the defendant has the status of a constitutional contract subject to enforcement.
(2) The People having breached their agreement in derogation of defendant’s Fourth and Sixth Amendment constitutional rights, the defendant would be entitled to specific performance were he not a predicate felon.
(3) As defendant has been found to have predicate felony status by the court, CPL 220.10 (subd 5, par [c]) renders the granting of specific performance unlawful.
(4) Constitutional and case law decisions as well as a policy need for the public to retain confidence in the integrity of the criminal justice system process require that on the facts of this case some remedy be provided for the violation of the defendant’s rights which remedy may not contravene CPL 220.10 (subd 5, par [c]).
DECISION
Therefore, it is the decision of the court that the motion of the defendant, is granted to the following extent:
(a) The indictment herein is dismissed pursuant to CPL 210.20 (subd 1, par [i]) and 210.40 (subd 1, pars [e], [f], [g]), unless the People within 30 days of the date of this decision file a superseding information charging the defendant with misdemeanor offenses only and further that the People at that time consent to the entry of a guilty plea to such a superseding information and a subsequent dismissal of this indictment.
(b) Should the defendant refuse to enter a plea of guilty to such a superseding information or otherwise fail to cooperate in the implementation of this decision, the People may thereupon request on notice to the defendant a hearing with respect to the alleged non-co-operation. Should *163 the court thereafter determine that defendant has not complied, defendant’s motion shall be deemed denied in all respects and this case moved to trial forthwith.