OPINION OF THE COURT
Raymond Harrington, J.
“The Courtroom is the focal point of the entire criminal justice system * * * Particularly for the victim, the judge is the personification of justice.” (President’s Task Force Report on Victims of Crime [Dec., 1983], p 73.)
Certainly the Trial Judge should ideally be perceived as “the personification of justice” by everyone involved in the system, including the defendant. More particularly, however, victims’ rights in the criminal justice system are now being asserted more forcefully than ever before. (Fair Treatment Standards for Crime Victims Act [Executive Law, art 23, L 1984, ch 94, eff April 24, 1984].) Certainly these rights have long languished, overwhelmed by other considerations.
Victims’ rights should be recognized, asserted and protected by the judiciary without doing harm to fundamental rights of defendants. The court, ever mindful of balancing those rights, is asked to disqualify itself from presiding over this matter because prior to a resolution of this case, *301 the victim’s family and friends have written to this Trial Judge demanding “justice”. Is a defendant’s right to a fair trial compromised by the Trial Judge being aware of the outrage of the alleged victim’s friends and family? Are communications by the victim’s family to the Trial Judge prior to verdict or plea an appropriate manner for the victim to exercise his right to participate in plea and sentence negotiations? Should these communications be encouraged or discouraged?
In this case the defendant, 16 years old, is indicted for the crime of sodomy in the first degree. It is alleged that he anally sodomized a 22-month-old infant. By the nature of these charges, it is understandable that those closest to this incident have responded with intense feelings. The parents and grandparents of the alleged infant victim have reacted with anger, outrage, and a cry for just retribution. The friends of the defendant have reverted to bewilderment, mystified that their “student”, “parishioner” or “friend” as the case may be, might be responsible for these charges. Nevertheless, they remain supportive of the defendant.
The intensity of emotions generated by these particular charges has found an outlet in many letters to the court. The infant’s family, in particular, has written several letters to the court. Actually five letters have been received by the court from the family of the infant and friends of his parents, addressed to the Honorable Abbey Boklan and referred to this court by that honorable Judge when the case was assigned to this Judge. Counsel for the defendant was advised of the existence of these letters at the first conference before this court, and they were and are available for either counsel’s inspection and/or copying. Thereafter, 16 letters were received by the court from many distinguished members of the community on behalf of the defendant. Teachers, priests and basketball coaches have all spoken highly of the defendant and his family. These letters are also available for either counsel’s inspection.
Having said this by way of introduction, the issue before this court is defendant’s application that the court recuse itself in the instant matter. The grounds for this particular request are: (1) that the court has become prejudiced *302 against the defendant by virtue of a “deluge” of letters to the court by the victim’s family and friends; and (2) that the court has been prejudiced by defense counsel’s offer to have the defendant plead guilty upon a promise of being granted youthful offender treatment. (CPL art 720.)
I — Victim’s Letters
In the first instance, what the defendant has characterized as a “deluge” of letters is not fittingly so described. Without commenting on the relevancy, poignancy and literary quality of any of the letters received by the court, the defendant has certainly “won the battle” on any quantifiable basis.
On the other hand, this court perceives little or no distinction between the manner in which this case has proceeded, including the submission of letters, and a myriad of other cases that have come before this Trial Judge. Indeed, many more notorious cases before this and other courts have resulted in larger and more vociferous outcries from the victims and, indeed, the entire community.
On the most personal level, this court, having examined its conscience, states categorically and without reservation that it harbors no prejudice against this defendant by reason of the letters, plea discussions or any other facts now known to this Trial Judge. Accordingly, the application then turns on whether the court must, as a matter of law, recuse itself because of some apparent prejudice to the defendant or an appearance of impropriety created by virtue of the letters and/or plea discussions.
Recently the National Conference of the Judiciary on the Rights of Victims of Crime issued a Statement of Recommended Judicial Practices published by the National Institute of Justice, United States Department of Justice (April, 1984). (See New York Marks Progress in Crime Victims’ Rights, NYU, May 1, 1984, p 25, col 5, p 36, col 1.) This manifesto was the product of a conference of Judges of courts of general jurisdiction of all our States at the American Bar Association’s National Judicial College. Those recommendations state, in part, that “victims shall be allowed to participate and, where appropriate, to give input through the prosecutor * * * ‘concerning’ * * * plea and sentence negotiations.” (Cf. Fair Treatment Standards *303 for Crime Victims Act, Executive Law, art 23.) Furthermore, “victim impact statements prior to sentencing should be encouraged and considered.” (CPL 390.30, subd 3, as amd by L 1982, ch 612, eff Nov. 1,1982.) On the other hand, the Canons of Judicial Conduct require that “A judge should * * * except ?s authorized by law, neither initiate nor consider ex parte or other communications concerning a pending * * * proceeding.” (Code of Judicial Conduct, Canon 3, Standard A [4].) The ethical standards of the prosecutor and defense counsel also prohibit ex parte communications with the court. (1 ABA Standards for Criminal Justice [2d ed], The Prosecution Function, Standard 3-2.8 [c]; Code of Professional Responsibility, EC 7-35.)
The better practice is that the prosecutor and defense counsel should try to funnel through their offices all communications to the court concerning pending matters, and to submit the same on notice to their adversary. The court is mindful that citizens have their own constitutional rights to communicate with the courts as their elected public officials, whether on behalf of the defendant or the alleged victim. Counsel cannot reasonably be expected to control every exercise of freedom of speech by individual citizens, whether they be friends of the victim or the defendant, or are just concerned members of the public.
A Judge should not consider ex parte communications; but, written documents provided to the court, whether supplied by either side or unsolicited, can be considered by the court where they are openly disclosed to the parties. This court concludes, therefore, that all of these letters are not ex parte communications under these circumstances. The court is satisfied that they can be considered in plea and sentence negotiations.
Moreover, this court believes that a victim’s communications to the court, when done in the foregoing manner, at any stage of a criminal proceeding should be encouraged and considered by the judiciary. It is important in all criminal cases for the court to know that there are “victims”, and to appreciate their concerns about plea bargaining and sentencing. In most instances, victims can and should communicate to the court through the prosecutor, but they should not be limited to that form of communica *304 tion and participation in the system. Indeed if the crime victim cannot vent his frustrations to the Trial Judge, that “personification” of justice, it undermines all of our efforts to ensure that justice is done under law. This is particularly so in the most heinous of crimes, where the system tries to channel the victim’s desire for revenge into a civilized form. By all means, this the judiciary must encourage.
II — Plea Discussion
Frank and open plea discussion has occurred in this case, assisted by communications from friends of the victim and the defendant. The New York Court of Appeals has repeatedly reaffirmed the important policies of openness and certainty that are vital to the plea bargaining process (People v Danny G., 61 NY2d 169; Matter of Benjamin S., 55 NY2d 116; People v Frederick, 45 NY2d 520; People v Selikoff, 35 NY2d 227).
On the other hand, no law has ever indicated that the People are required to plea bargain or that the trial court must “sentence bargain”, making conditional commitments as to the prospective sentence (cf. People v Farrar, 52 NY2d 302). The court views the bargaining process here as one where, after evaluation of the case, the prosecution insists upon a plea to the most serious offense, and the court, after considering all the information provided to it, declines to conditionally promise any particular sentence and/or youthful offender treatment. Such a decision is an act of discretion properly within the court’s jurisdiction. (CPL 220.10, subd 3; 720.20, subd 1.)
Based upon this court’s own experience and general knowledge of the criminal justice system, requests to plead guilty with various conditions are made by defense counsel daily, on scores of occasions, in every courtroom in this State. This court is hardly offended by any attorney’s efforts to obtain a favorable pretrial disposition of his client’s case, and certainly does not hold such efforts against the defendant. Indeed, whether rightly or wrongly, such is a daily staple of a criminal Trial Judge’s activity. This court is no exception.
Additionally, it is worthy of note that a mere request or offer to plead guilty need not necessarily require an infer *305 ence that a defendant admits the acts charged. Courts can accept a guilty plea without such an admission under certain circumstances. (North Carolina v Alford, 400 US 25; People v Serrano, 15 NY2d 304.)
Cases cited by the defendant, such as People v Zappacosta (77 AD2d 928), concerning recusal of a Trial Judge after a waiver of the right to a jury trial, seem inapposite at this time. Accordingly, such precedent is of no moment to this application. Likewise, any association by the victim with the Nassau County Probation Department is academic at the present moment.
Ill — Conclusion
Again, having examined its own conscience, this court states categorically and without reservation that it harbors no prejudice against this defendant and sees no reason in law or in conscience why it cannot preside over a fair trial for this defendant. The motion is therefore denied.