People v Owensford (2022 NY Slip Op 05716)

People v Owensford

2022 NY Slip Op 05716

Decided on October 12, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 12, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
ROBERT J. MILLER
LARA J. GENOVESI
BARRY E. WARHIT, JJ.

2016-04094
 (Ind. No. 6097/13)

[*1]The People of the State of New York, respondent,
v
Antonio Owensford, appellant.

Patricia Pazner, New York, NY (Lynn W. L. Fahey and David P. Greenberg of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Sholom J. Twersky of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Vincent M. Del Giudice, J.), rendered March 10, 2016, as amended April 8, 2016, convicting him of predatory sexual assault (two counts), attempted murder in the second degree (two counts), rape in the first degree, rape in the third degree, criminal sexual act in the first degree, assault in the first degree (two counts), attempted assault in the first degree (two counts), assault in the second degree, assault in the third degree, sexual abuse in the first degree (three counts), sexual abuse in the third degree (three counts), sexual misconduct (two counts), reckless endangerment in the second degree, and menacing in the third degree, upon his plea of guilty, and imposing sentence.
ORDERED that the judgment, as amended, is reversed, on the law, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith before a different Justice.
The defendant and one codefendant, Anwar Desouza, were charged with numerous crimes, including, inter alia, multiple counts of predatory sexual assault and attempted murder in the second degree, based on acts they allegedly committed in concert. The defendant opted to enter into a plea and cooperation agreement and to testify against the codefendant at trial. He sat for interviews with prosecutors on February 15 and March 2, 2015. In a duly executed memorandum of agreement dated July 16, 2015 (hereinafter the cooperation agreement), the defendant agreed to cooperate with the prosecutor's office, to provide "truthful disclosure of all information relevant to criminal activity known to [him]," and to "attend any meeting scheduled to discuss matters relating to [this] cooperation" upon request by the prosecutor's office. The cooperation agreement provided that the defendant would enter a guilty plea to all counts of the indictment, which carried a maximum aggregate sentence of 75 years to life. If, however, the defendant "provided full and complete cooperation, including truthful testimony," he would be permitted to withdraw that plea and instead enter a plea of guilty to one count of rape in the first degree in full satisfaction of the indictment, with a recommended sentence of a determinate term of imprisonment of 15 years.
During the plea proceeding, the Supreme Court indicated that, if the defendant fully complied with the cooperation agreement, then he would be permitted to withdraw his guilty plea [*2]to all counts except for one count of rape in the first degree and he would be sentenced to a determinate term of imprisonment of 15 years, to be followed by 15 years of postrelease supervision. The court further stated that, if the defendant failed to comply with the cooperation agreement, he would not be permitted to withdraw his guilty plea to all counts of the indictment and he would receive a total sentence of "75 years to life." Consistent with the cooperation agreement, the defendant entered a plea of guilty to all counts in the indictment.
Prior to the trial of the codefendant, the codefendant's statements to police and the victim's identification of the codefendant were suppressed. During the codefendant's trial, but prior to the defendant taking the stand, prosecutors questioned the defendant about evidence that he had not seen before-i.e., deleted text messages and calls sent from the codefendant's phone during the hours leading up to the subject crimes. This prompted the defendant to provide additional information regarding his contact with a prostitute prior to the crimes. When asked why he did not previously mention this additional information, the defendant said that "he did not think it was relevant." The prosecutors believed that this additional information was problematic for the timeline of events leading up to the crimes that they had already presented at trial. Purportedly believing it to be their only choice, the prosecutors proceeded to dismiss the indictment against the codefendant.
On January 19, 2016, the parties appeared before the Supreme Court and the prosecutor stated that the defendant breached the cooperation agreement. Defense counsel disagreed with the prosecutor's position that the defendant lied, but defense counsel acknowledged that the defendant "appear[ed] to have" omitted certain information during his interviews with prosecutors because the defendant believed that this information was not relevant insofar as it pertained to events that took place prior to the subject crimes and did not involve the codefendant.
The Supreme Court directed the People to provide written submissions about the defendant's alleged breach of the cooperation agreement and defense counsel to file a written response. By way of a written submission, the People submitted an unsigned and undated document bearing letterhead naming one of the prosecutors who interviewed the defendant in early 2015 along with several exhibits, including the cooperation agreement. In the defendant's written submission, he contended that he did not breach the cooperation agreement, that he "was truthful during all meetings" with prosecutors, and that he was "willing and ready to testify" against the codefendant on the People's behalf. The defendant conceded that he did not tell the prosecutors certain information until presented with new evidence during the codefendant's trial, but maintained that he was unaware that this additional information was relevant to the case against the codefendant because it did not relate to any actions or statements by the codefendant. The defendant further argued that his omission was not intentional and that it was reasonable that he did not have "a perfect recollection of the exact timing of events as they occurred" on the days at issue, especially in light of his admitted drug and alcohol use on the day of the subject crimes.
Thereafter, the parties appeared and the Supreme Court rejected the defendant's request for a hearing, stating that the parties' written submissions and transcripts of prior proceedings constituted "a sufficient inquiry for [the court] to determine whether or not there was a complete breach" of the cooperation agreement. Although the court permitted defense counsel to make some oral argument, the court interrupted multiple times to challenge counsel's position, comment upon the defendant's "horrible" acts, and denigrate counsel's explanation of the defendant's frame of mind with respect to the additional information provided during the codefendant's trial. Without considering any further evidence or hearing any testimony, the court found that the defendant "breached the cooperation agreement and breached the plea agreement," and, therefore, the court was "released from the promise[d] sentence." In reaching this determination, the court stated that the People "unilaterally" determine whether the cooperation agreement was breached and that the court is "not allowed to inquire whether or not it's material." Thus, the court abdicated its responsibility to determine whether a material breach occurred.
The Supreme Court sentenced the defendant to an aggregate term of imprisonment of 25 years to life. The defendant appeals, arguing, among other things, that he was denied due process because the court failed to hold a hearing or make a sufficient inquiry to determine whether [*3]he violated the terms of his plea and cooperation agreement.
Contrary to the People's contention, this issue has been preserved for appellate review. The record reflects that, in response "to a protest by a party, the court expressly decided [this] question raised on appeal" (CPL 470.05[2]; cf. People v Shealy, 195 AD3d 1047, 1048).
"[S]entencing is a critical stage of the criminal proceeding and . . . 'the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause'" (People v Outley, 80 NY2d 702, 712, quoting Gardner v Florida, 430 US 349, 358). Generally, "a guilty plea induced by an unfulfilled promise either must be vacated or the promise honored" (People v Selikoff, 35 NY2d 227, 241), but, where no promises are breached by the People and a defendant fails to abide by the terms of a cooperation agreement, a court is not obligated to permit a defendant to withdraw his plea (see People v Parker, 173 AD3d 1557, 1559; People v Aponte, 212 AD2d 157, 161; cf. Klein v Cowhey, 161 AD2d 643). Under the circumstances present here, these important issues have not been adequately resolved because the Supreme Court failed to hold a hearing or conduct a sufficient inquiry into whether the defendant violated the terms of the cooperation agreement (cf. People v Valencia, 3 NY3d 714, 715; People v Schaefer, 136 AD2d 661, 661).
This is not a case where a criminal defendant simply failed to submit to an interview by the Department of Probation as required by the terms of a plea agreement (cf. People v Placencia, 203 AD3d 954, 955), and it is not a case where a defendant simply refused to testify against another criminal defendant in violation of a cooperation agreement (cf. People v Rodriguez, 33 NY3d 956, 957).
This record reflects that the parties are sharply at odds as to whether there was a material breach of the cooperation agreement when the defendant provided additional information in response to new evidence shown to him during the codefendant's trial (cf. People v Smith, 105 AD3d 1065, 1066 ). The determination of this issue rests on nuanced considerations, including the defendant's intent and the prosecutors' interactions with the defendant while preparing for the codefendant's trial. A hearing would have provided, among other things, an opportunity for the defendant to testify about the nature of the belatedly disclosed information, his reasons therefor, and his understanding of its importance to the case against the codefendant. In sum, this record does not reflect that the defendant and his counsel were given sufficient opportunity to refute the assertions that the defendant materially breached the cooperation agreement (cf. People v Albergotti, 17 NY3d 748, 750).
Accordingly, we reverse and remit the matter for a hearing (see People v Warde, 45 AD3d 879, 880; cf. People v Brown, 14 NY3d 113, 118; People v Armstead, 35 AD3d 624, 626).
We note that, because of remarks made by the Supreme Court Justice throughout the proceedings, we remit the matter to the Supreme Court, Kings County, for proceedings before a different Justice (see People v Matyjewicz, 80 AD3d 779, 780).
The defendant's remaining contentions have been rendered academic in light of our determination.
BRATHWAITE NELSON, J.P., MILLER, GENOVESI and WARHIT, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court